Anthony C. AGUILAR and Susan B. Aguilar, Appellants,

v.

Maria L. MORALES, as Executrix of the Estate of Concepcion Castaneda Trujillo, and as Trustee of the Elizario P. Trujillo Residuary Trust, Appellees.

No. 08–03–00276–CV.

Court of Appeals of Texas, El Paso.

April 21, 2005.

Rehearing Overruled May 25, 2005.

Anthony C. Aguilar, El Paso, pro se.

Michael R. 'Mickey' Milligan, El Paso, for appellant Susan B. Aguilar.

Bryan H. Hall, Richard & Hall, P.C., Thomas Wicker Jr., El Paso, for appellees.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Anthony C. Aguilar and Susan B. Aguilar (the Aguilars) appeal from a summary judgment granted in favor of Maria L. Morales as Executrix of the Estate of Concepcion Castaneda Trujillo and as Trustee of the Elizario P. Trujillo Residuary Trust (Morales or the Morales defendants).[1] The Aguilars raise sixteen issues on appeal pertaining to Morales.[2] Finding no error, we affirm.

## FACTUAL SUMMARY

The Aguilars own property in El Paso County adjacent to the Trujillo Farm, which is owned by the Estate of Concepcion Castaneda Trujillo and the Elizario P. Trujillo Residuary Trust. Morales and Enrique Trujillo (Trujillo) are the adult children of Concepcion and Elizario Trujillo, both deceased. Morales is the executrix of her mother's estate and trustee of her father's residuary trust. In November 1996, Trujillo placed several truckloads of manure on the family farms, including the Trujillo Farm. At that time, Trujillo conducted farming operations on the Trujillo Farm pursuant to a crop sharing agreement with his mother, who was still living. Trujillo made the decisions regarding planting, fertilization, and irrigation.

---

1. In a related case, the Aguilars also appeal from a summary judgment granted in favor of Morales' brother, Enrique Trujillo. We consolidated the two cases and have issued an opinion and judgment affirming the summary judgment granted in favor of Enrique Trujillo. *Anthony C. Aguilar and Susan B. Aguilar v. Enrique Trujillo, also known as Henry Trujillo, Individually and as Agent for Concepcion Castaneda Trujillo, Deceased, and the Elizario P. Trujillo Residuary Trust,* No. 08–03–00496–CV, 162 S.W.3d 839, 2005 WL 927351 (Tex. App.-El Paso April 21, 2005). We ordered the appeals consolidated for purposes of briefing and oral argument.

2. In the consolidated brief, the Aguilars raise a total of twenty-three issues, numbered One through Nineteen, and Twenty–One through Twenty–Four. There is no Issue Twenty. Not all of the issues relate to Morales. Issues One through Eleven and Twenty–One through Twenty–Four relate to both Morales and Trujillo. Issue Twelve pertains solely to Morales. Issues Thirteen through Nineteen relate solely to Trujillo.

In January 1997, the Aguilars filed suit against Enrique Trujillo, Concepcion Trujillo, and the residuary trust,[3] alleging breach of an oral agreement to grant an easement for the purpose of extending a water line to the Aguilar property. Their suit also included a claim for damages caused by the discharge of agricultural waste on the Trujillo Farm in November 1996. The Aguilars alleged that contaminants found in the agricultural waste will leach into the groundwater and contaminate their well water when the property is irrigated. The Aguilars subsequently amended their petition to drop the breach of contract claim, and added claims for nuisance and trespass based on their assertion that their well had been contaminated by the manure. Their suit also included a claim for tortious interference with a contractual relationship. The Aguilars later amended their petition to add as defendants Morales and the dairy[4] which had supplied the manure to Trujillo.

On May 10, 2001, Trujillo served a request for production and inspection on the Aguilars in order to test their well water. The Aguilars resisted the request and demanded to know the identity of the person who would test the well. Trujillo's attorney, Tom Wicker, initially refused to reveal the identity of his consulting expert out of concern that Mr. Aguilar would attempt to contact the witness. But the trial court required that Trujillo identify his consulting expert. On July 27, 2001, Wicker notified Mr. Aguilar that James Maly of Frontera Environmental would require access to the Aguilar property on the following day for the purpose of taking water samples from the well. Maly drew

the samples and filled out a chain of custody form. Wicker's legal assistant then delivered the samples to Trace Analysis for testing. On August 6, 2001, Mr. Aguilar contacted Maly without Wicker's consent and hired Maly as an expert witness for the Aguilars. The Aguilars paid Frontera Environmental a $5,000 retainer. Maly accepted employment with the Aguilars because, in his opinion, he had not been retained by Trujillo as a consulting expert. Acting on behalf of the Aguilars, Maly drew additional water samples from the well and submitted them for testing. On September 28, 2001, the Aguilars designated Maly and Hector Villa, the President and CEO of Frontera Environmental, as expert witnesses. Villa and Maly produced a joint expert report dated October 15, 2001. Trujillo filed a motion to strike the Aguilars' experts on the ground that Mr. Aguilar had improperly contacted a consulting expert in violation of Rule 4.02(b) of the Rules of Professional Conduct. Following a hearing, the trial court granted the motion to strike Maly, Villa, and all employees of Frontera Environmental.

The Aguilars subsequently retained a geology expert, Dirk Schulze–Makuch, Ph.D. (Dr. Schulze–Makuch), and provided his report to Trujillo and Morales. Dr. Schulze–Makuch's report reflected that in forming his opinions, he relied on the work product, opinions, and expert report provided by Frontera Environmental and Maly. Consequently, Morales and Trujillo filed a motion to strike Dr. Schulze–Makuch because he had relied on the work product and opinions of witnesses who had been excluded by the trial court. The trial

**3.** The suit named Enrique Trujillo individually and as agent for his mother.

**4.** The trial court granted summary judgment in favor of the dairy and severed the case from the remaining claims. We affirmed the

summary judgment. *Aguilar v. LVDVD, L.C.,* No. No. 08–01–00438–CV, 2002 WL 1732520 (Tex.App.-El Paso July 25, 2002, pet. denied)(not designated for publication).

court granted the motion and excluded Dr. Schulze–Makuch.

Both Morales and Trujillo filed motions for traditional and no-evidence summary judgment. On November 1, 2002, Trujillo and Morales filed a joint motion for summary judgment alleging that the Aguilars had no evidence that the manure placed on the Trujillo Farm caused contamination of their water well, and no evidence of recoverable damages. Additionally, Trujillo and Morales asserted three affirmative defenses in response to the tortious interference claim. The trial court granted summary judgment in favor of Morales on December 27, 2002 without specifying the precise grounds for the ruling. The court also granted Morales' motion to sever and assigned a new cause number 2003–1501, to the portion of the case pertaining to her. The claims against Trujillo remained pending in the original cause number 97–160. The trial court granted final summary judgment in favor of Trujillo on September 10, 2003. The Aguilars timely filed notices of appeal in both cause number 97–160 and cause number 2003–1501.

## STRIKING EXPERT WITNESSES

In ten related issues, the Aguilars challenge the exclusion of its expert witnesses. Issues One through Eight pertain to the striking of Maly, Villa, and any employee of Frontera Environmental, and Issues Nine and Ten address the exclusion of Dr. Schulze–Makuch. The Aguilars argue in several issues that Maly was not a consulting expert, and therefore, Mr. Aguilar was not prohibited from contacting him. Further, they argue that the sanction should not be imposed against Mrs. Aguilar since she is not an attorney and did not personally contact Maly. Additionally, the Aguilars contend that a violation of Disciplinary Rule 4.02(b) cannot serve as the basis for the exclusion of these witnesses.

*Standard of Review*

We must first determine whether the Aguilars are correct that we review the court's orders *de novo*. Although Trujillo did not specifically cite Rule 215 in his motion to strike and for sanctions, his motion asserted that the Aguilars violated the discovery rules by contacting Maly. Additionally, Trujillo alleged that Mr. Aguilar's unauthorized contact with Maly violated Disciplinary Rule 4.02(b). These allegations invoked the trial court's discretion to impose sanctions pursuant to Rule 215. We reject the argument that improper contact with a consulting expert cannot result in sanctions.

■■ If the trial court finds that a party is abusing the discovery process in seeking, making, or resisting discovery, the court may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5) and (8) of Rule 215.2(b). *See* TEX.R.CIV.P. 215.3. The enumerated sanctions include prohibiting a party from introducing designated matters in evidence. *See* TEX. R.CIV.P. 215.2(b)(4). We review imposition of sanctions under Rule 215 for an abuse of discretion. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990); *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). If the sanctions imposed are not just, a trial court abuses its discretion. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991).

■■ In *TransAmerican,* the Supreme Court set out a two-part test for determining whether a particular sanction is just. *Spohn Hospital v. Mayer,* 104 S.W.3d 878, 882 (Tex.2003); *TransAmerican,* 811 S.W.2d at 917. First, there must be a direct nexus between the offensive conduct, the offender, and the sanction imposed. *Spohn,* 104 S.W.3d at 882; *TransAmerican,* 811 S.W.2d at 917. A just

sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. *Spohn,* 104 S.W.3d at 882; *TransAmerican,* 811 S.W.2d at 917. The trial court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both. *Spohn,* 104 S.W.3d at 882; *TransAmerican,* 811 S.W.2d at 917.

■ Second, just sanctions must not be excessive. *Spohn,* 104 S.W.3d at 882; *TransAmerican,* 811 S.W.2d at 917. In other words, a sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes, which include securing compliance with discovery rules, deterring other litigants from similar misconduct, and punishing violators. *Spohn,* 104 S.W.3d at 882; *TransAmerican,* 811 S.W.2d at 917.

### Relationship Between Offensive Conduct and the Sanction Imposed

All of the Aguilars' arguments relate to the first part of the *TransAmerican* test. They argue that (1) Maly was not a consulting expert; (2) violation of Disciplinary Rule 4.02(b) cannot result in the sanction imposed by the trial court; and (3) a sanction should not be imposed against Mrs. Aguilar because she did not contact Maly. We will address these arguments in the order presented.

■ A consulting expert is defined as an expert who has been consulted, retained, or specially employed by a party in antici-pation of litigation or in preparation for trial, but who is not a testifying expert. TEX.R.CIV.P. 192.7(d). The Aguilars contend that Maly is not a consulting expert because he did not enter into a written contract with Trujillo's attorneys and he was not paid an appropriate retainer for a consulting expert. They do not address whether he was consulted or specially employed in anticipation of litigation or in preparation for trial.

At Wicker's instruction, his legal assistant, Louise Elorreaga, contacted Maly and spoke with him about the pending litigation brought by the Aguilars against Trujillo. Maly agreed to take water samples on behalf of Trujillo. Maly admitted that Elorreaga informed him that there was a dispute between the parties regarding alleged contamination of the Aguilars' well and he was hired for his expertise and knowledge of water wells. He also conceded that the water samples taken by him are an important part of the lawsuit. Wicker plainly considered Maly a consulting expert, and based upon Rule 192.3(e), Wicker resisted the Aguilars' requests that he reveal the identity of the person who would be taking the water samples and submitting them for testing.[5] Wicker informed the trial court that he did not want to reveal the identity of his consulting expert who would be conducting the water sampling because he feared Mr. Aguilar would contact him without prior consent, but the trial court required him to do so. Maly, accompanied by Elorreaga, subsequently took the water samples from the Aguilars' well and Frontera Environmen-

---

5. The identity, mental impressions, and opinions of a consulting expert whose mental impressions and opinion shave not been reviewed by a testifying expert are not discoverable. TEX.R.CIV.P. 192.3(e). However, a party must disclose the identity of a consulting expert who has obtained first-hand knowledge of relevant facts. *See* TEX.R.CIV.P. 192.3(c)(providing for discovery of the name, address, and telephone number of persons having knowledge of relevant facts; an expert is "a person with knowledge of relevant facts" only if that knowledge was obtained first-hand or if it was not obtained in preparation of trial or in anticipation of litigation).

tal billed Wicker's law firm for the services performed by Maly.

The lack of a written contract or payment of a consulting expert retainer is not dispositive of the issue before us. The evidence, while conflicting, supports a conclusion by the trial court that Wicker, acting through his legal assistant, consulted with Maly on behalf of Trujillo and specially employed him to take the water samples from the well in preparation for trial.

■ The Aguilars next argue that a violation of Rule 4.02(b) of the Texas Disciplinary Rules of Professional Conduct cannot serve as the basis for the exclusion of their expert witnesses. Rule 4.02(b) provides:

> In representing a client a lawyer shall not communicate or cause another to communicate about the subject of representation with a person or organization a lawyer knows to be employed or retained for the purpose of conferring with or advising another lawyer about the subject of the representation, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

TEX.DISCIPLINARY R.PROF.CONDUCT 4.02(b)(1989), *reprinted in* TEX.GOV'T CODE ANN., Tit. 2, Subtit. G, App. A(Vernon 20005)(STATE BAR RULES art. X, § 9). Comment 3 specifically notes that Rule 4.02(b) prohibits an attorney from contacting experts employed or retained by opposing counsel for a particular matter unless opposing counsel has first consented. TEX.DISCIPLINARY R.PROF.CONDUCT 4.02(b), comment 3. The evidence shows that Mr. Aguilar contacted Maly without Wicker's consent and with knowledge that Maly was Trujillo's consulting expert.

Rule 215.3 authorizes a trial court to impose a sanction if the court finds that a party has abused the discovery process in seeking, making, or resisting discovery. Therefore, the issue is not whether the Disciplinary Rules authorize the sanction imposed by the trial court. Rather, the question is whether Mr. Aguilar's violation of Rule 4.02(b) constitutes an abuse of the discovery process within the meaning of Rule 215.3 such that the trial court was authorized to impose the sanction delineated in paragraph (5) of Rule 215.2(b). The evidence reflects that Mr. Aguilar knew that Wicker did not want to reveal the identity of his consulting expert because he feared that Mr. Aguilar would contact Maly without his consent. After learning the consulting expert's identity, Mr. Aguilar proceeded to not only contact Maly without Wicker's consent but he actually hired Maly and Frontera Environmental to serve as the Aguilars' designated expert witnesses in the case. This effectively deprived Trujillo of his consulting experts. We conclude that Mr. Aguilar's contact with Maly constituted an abuse of the discovery process.

■ Finally, Mrs. Aguilar contends that the court erred by striking the experts with respect to her because she is not an attorney and she did not personally contact Maly. We understand her to argue that she should not be punished for Mr. Aguilar's violation of the discovery rules. It is difficult to determine Mr. Aguilar's status with respect to Mrs. Aguilar because he has appeared as both a *pro se* plaintiff and as counsel for Mrs. Aguilar during the course of these proceedings. In some pleadings found in the record, Mr. Aguilar has been shown as counsel of record for Mrs. Aguilar. In those instances, Mr. Aguilar is shown as being represented by Gino Estrada–C. But at other times, Mr. Aguilar has signed the pleadings or appeared *pro se,* and Mr. Estrada–C is shown as counsel for Mrs. Aguilar. At the time Mr. Aguilar engaged in the offensive conduct, the majority of the pleadings showed him as a *pro se* plaintiff. We note,

however, that other than signing various pleadings, Mr. Estrada–C has not taken an active role in the prosecution of this case. At hearings, Mr. Aguilar has taken the lead role for the plaintiffs while Mr. Estrada–C has simply adopted Mr. Aguilar's position. Under these circumstances, the trial court could reasonably have concluded that Mr. Aguilar contacted Maly on behalf of both himself and his wife, and therefore, she should not be permitted to benefit from the discovery abuse.

Because the Aguilars do not argue on appeal that the trial court failed to consider a lesser sanction, it is unnecessary for us to review the second part of the *Trans-American* standard. Having determined that the sanction imposed is just, we overrule Issues One through Ten.

## SUMMARY JUDGMENT

In Issues Eleven through Thirteen, the Aguilars contend that the trial court erred by granting summary judgment in favor of Morales. Morales filed both traditional and no-evidence motions for summary judgment.[6] We will address the no-evidence summary judgment as it applies to all of the Aguilars' causes of action except tortious interference. The affirmative defenses raised in connection with the tortious interference claim must be addressed in the context of traditional summary judgment rather than a no evidence motion.

### Standards of Review

In a traditional summary judgment proceeding, the standard of review on appeal is whether the successful movant at the trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *Lear Siegler, Inc. v.*

*Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.-El Paso 1996, writ denied). The question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970); *Duran*, 921 S.W.2d at 784. In resolving these issues, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *Nixon v. Mr. Property Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Duran*, 921 S.W.2d at 784. A trial court properly grants summary judgment in favor of a defendant if that party conclusively establishes all elements of an affirmative defense, or conclusively negates at least one element of the plaintiff's claim. *American Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

A no-evidence summary judgment under Tex.R.Civ.P. 166a(i) is essentially a pretrial directed verdict, and a reviewing court applies the same legal sufficiency standard. *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex. App.-El Paso 2000, no pet.). The party moving for summary judgment on this basis must specifically state the elements as to which there is no evidence. Tex. R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *Id.* When reviewing a no-evidence summary judgment, the reviewing court views the evidence in the light most favor-

---

**6.** Morales filed an individual motion for summary judgment and joined with Trujillo in a joint motion for summary judgment.

able to the non-movant disregarding all contrary evidence and inferences. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the respondent counters with more than a scintilla of probative evidence to raise a genuine issue of material fact. *See Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions. *Havner*, 953 S.W.2d at 711. In a case where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### Specificity of Summary Judgment Motion

█ The Aguilars first contend that Morales' no-evidence motion for summary judgment is defective because it is does not sufficiently point out the elements which Morales seeks to challenge. *See* Tex.R.Civ.P. 166a(i)(requiring that the summary judgment motion state the elements as to which there is no evidence). Morales' no-evidence motion alleges: (1) there is no evidence that the Morales defendants committed any act which caused damage to the Aguilars or their property; (2) there is no evidence that the Morales defendants omitted any action which would make them liable for the damages sought by the Aguilars; (3) there is no evidence that the Aguilars suffered any damages proximately caused by any actionable conduct of the Morales defendants; (4) there is no evidence that the Morales defendants breached a legal duty owed to the Aguilars; (5) there is no evidence that the Morales defendants were responsible for the placement of manure on the Trujillo Farm; and (6) there is no evidence that any of the Morales defendants had any advance knowledge or gave permission to Trujillo to place manure on the Trujillo Farm. Additionally, Morales argued in the joint motion filed with Trujillo that the Aguilars had no evidence that the manure placed on the Trujillo Farm caused contamination of their water well, and no evidence of recoverable damages. The motions sufficiently identified the challenged elements.

### Res Ipsa Loquitur Doctrine

█ After the defendants filed their motions for summary judgment, the Aguilars amended their petition to add an allegation based on the *res ipsa loquitur* doctrine. *Res ipsa loquitur* is a rule of evidence whereby negligence of the alleged wrongdoer may be inferred from the mere fact that the accident happened, provided (1) the character of the accident and the circumstances attending it lead reasonably to the belief that, in the absence of negligence, it would not have occurred, and (2) the thing which caused the injury is shown to have been under the management and control of the alleged wrongdoer. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex.1990). The effect of successfully invoking the *res ipsa* doctrine is that the plaintiff can survive no-evidence procedural challenges. *See Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 251 (Tex. 1975)(no presumption of defendant's negligence arises; jury is merely free to infer negligence; plaintiff continues to have bur-

den of persuading jury by preponderance of evidence that defendant was negligent).

The *res ipsa* doctrine is inapplicable to this case. The Aguilars did not present any evidence that groundwater contamination ordinarily does not occur in the absence of negligence. *See Western Greenhouses v. United States,* 878 F.Supp. 917, 930 (N.D.Tex.1995). Consequently, the pleading of *res ipsa* does not defeat the no-evidence summary judgment motion.

### Nuisance, Nuisance Per Se, and Continuing Trespass

■ The Aguilars contend that they produced sufficient evidence to withstand the no-evidence motion as to the nuisance, nuisance *per se,* and continuing trespass causes of action. Morales responds that the Aguilars failed to produce any evidence that they engaged in conduct which proximately caused the damages alleged by the Aguilars. We agree.

■ A nuisance is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use or enjoy it. *Holubec v. Brandenberger,* 111 S.W.3d 32, 36 (Tex.2003); *Walton v. Phillips Petroleum Co.,* 65 S.W.3d 262, 270 (Tex.App.-El Paso 2001, no pet.). A nuisance may arise by causing (1) physical harm to property, such as by the encroachment of a damaging substance or by the property's destruction, (2) physical harm to a person on his property from an assault on his senses or by other personal injury, and (3) emotional harm to a person from the deprivation of the enjoyment of his property through fear, apprehension, or loss of peace of mind. *Walton,* 65 S.W.3d at 270. For· an actionable nuisance, a defendant must generally engage in one of three kinds of activity: (1) intentional invasion of another's interests; (2)

negligent invasion of another's interests; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *Z.A.O., Inc. f/k/a Bell Thunderbird Oil Co., Inc. v. Yarbrough Drive Center Joint Venture,* 50 S.W.3d 531, 532 (Tex.App.-El Paso 2001, no pet.); *Hicks v. Humble Oil & Refining Co.,* 970 S.W.2d 90, 96 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

■ The Aguilars also brought a nuisance *per se* claim against the Morales defendants, alleging that they violated a law by discharging agricultural waste on the Trujillo Farm. A nuisance *per se* is an act, occupation, or structure that is a nuisance at all times, under any circumstances, and in any location. ·*Freedman v. Briarcroft Property. Owners, Inc.,* 776 S.W.2d 212, 216 (Tex.App.-Houston [14th Dist.] 1989, writ denied).

■ The Aguilars' pleadings include a claim for continuing trespass and a request for injunctive relief. Every unauthorized entry is a trespass even if no damage is done. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 827 (Tex. 1997); *General Mills Restaurants, Inc. v. Texas Wings, Inc.,* 12 S.W.3d 827, 833 (Tex.App.-Dallas 2000, no pet.). A trespass can be either by entry of a person on another's land or by causing or permitting a thing to cross the boundary of the premises. *City of Arlington v. City of Fort Worth,* 873 S.W.2d 765, 769 (Tex.App.-Fort Worth 1994, writ dism'd w.o.j.). Finally, a trespass may be committed on, beneath, or above the surface of the earth. *City of Fort Worth,* 873 S.W.2d at 769. Injunction is a proper remedy to restrain repeated or continuing trespasses. *City of Fort Worth,* 873 S.W.2d at 769.

In her motion, Morales argued that Trujillo was an independent contractor and neither she nor her mother was responsi-

ble for the placement of manure on the Trujillo Farm. Morales supported her motion for summary judgment with an affidavit by Trujillo in which he stated that he operated the farm pursuant to a crop sharing agreement with his mother. Trujillo functioned as a lessee farmer and made all of the decisions regarding planting, fertilization, and irrigation, including the decision to place manure on the property. Morales, her father's trust, and her mother did not have any knowledge regarding the placement of manure on the farm. In her own affidavit, Morales stated that Trujillo operated the farm without any input from Morales, the trust, or her mother, and that he made the decisions regarding what crops to plant, when to water, and what fertilizers to use.

The Aguilars filed a lengthy response to the motion for summary judgment and attached evidence, including the expert reports of Maly and Dr. Schulze–Makuch, and excerpts from Dr. Schulze–Makuch's deposition. The trial court sustained objections to much of the Aguilars' evidence. The Aguilars' response did not contain any evidence showing that Morales, her mother, or her father's trust intentionally or negligently committed any action which caused the encroachment of a damaging substance onto the Aguilars' property. Consequently, the trial court properly granted summary judgment with respect to the nuisance, nuisance *per se*, and continuing trespass claims.

### *Tortious Interference*

 The Aguilars also complained that Morales and Trujillo tortiously interfered with their contractual relationship with Frontera Environmental by successfully prosecuting their motions to strike Maly, Villa, and Frontera Environmental. The joint motion for summary judgment raised multiple affirmative defenses but we need only address the justification defense.

 The elements of tortious interference with a contractual relationship are: (1) the existence of a contract (2) the willful or intentional act of interference (3) that was a proximate cause of damages and (4) actual damage or loss occurred. *Hopkins v. Highlands Ins. Co.*, 838 S.W.2d 819, 824 (Tex.App.-El Paso 1992, no pet.). A party is privileged to interfere with a contractual relationship if (1) it acts in the *bona fide* exercise of its own rights, or (2) it has an equal or superior right in the subject matter to that of the party to the contract. *Sterner v. Marathon Oil, Co.*, 767 S.W.2d 686, 691 (Tex.1989). It is undisputed that Morales and Trujillo successfully prosecuted their motions to strike the expert witnesses based on Mr. Aguilar's abuse of the discovery process. In so doing, Morales and Trujillo acted in a *bona fide* exercise of their own rights. The Aguilars did not raise a fact issue with respect to this affirmative defense and the trial court did not err in granting summary judgment on this ground. Issues Eleven through Twelve are overruled.

### PRIOR SUMMARY JUDGMENT EVIDENCE

In Issues Twenty–One through Twenty–Four, the Aguilars complain that the trial court failed to consider evidence associated with a prior summary judgment motion. On June 27, 2001, the Aguilars filed a motion for partial summary judgment. The motion referenced responses to requests for admissions and numerous depositions, but it did not include the documents or excerpts from the depositions. The Aguilars' response to the motions for summary judgment filed by Morales and Trujillo incorporated by reference their prior summary judgment motion. Trujillo filed written objections to the Aguilars'

summary judgment response and evidence. Trujillo objected, in part, that the Aguilars had failed to comply with the trial court's order pertaining to summary judgment motions and responses because they had served Trujillo's attorney with entire depositions, not excerpts, and had failed to specify the page numbers where the evidence relied on by the Aguilars could be found. The trial court's order required that a summary judgment response "quote verbatim the facts relied upon, identify the source of those facts, and *specify* where in the Summary Judgment evidence those facts may be found." The trial judge, noting that he did not attempt to carry the Aguilars' response because of its weight, sustained Trujillo's objections.

 The Aguilars did not cite, quote or otherwise point out to the trial court the testimony they relied on to create a fact issue. A general reference to a voluminous record that does not direct the trial court and parties to the evidence on which the movant relies is insufficient. *See Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 81 (Tex.1989). In the absence of any guidance from the non-movant where the evidence can be found, the trial and appellate courts are not required to sift through voluminous deposition transcriptions in search of evidence to support the non-movant's argument that a fact issue exists. *See Shelton v. Sargent,* 144 S.W.3d 113, 120 (Tex.App.-Fort Worth 2004, pet. denied)(even if depositions and other evidence are contained in the trial court's file, a general reference to a voluminous record that does not direct the trial court and parties to the evidence on which the movant relies is insufficient to support a claim of a dispute as to a material fact necessary to survive summary judgment; the trial court is not required to search a voluminous file for summary judgment evidence raising a genuine issue of material fact without more specific guidance from the non-movant); *White Oak Bend Municipal Utility District v. Robertson,* No. 14–00–00155–CV, 2002 WL 245957 (Tex.App.-Houston [14th Dist.] Feb. 21, 2002, pet. denied) (not designated for publication)(on appeal of summary judgment on limitations grounds, appellate court would not consider entire transcripts from depositions of six witnesses, which exceeded 1,300 pages in length; appellant did not cite any portions of summary judgment evidence that it claimed raised genuine issue of material fact as to discovery rule, appellant did not cite most pages of deposition transcripts for any proposition, and neither trial court nor appellate court were required to sift through voluminous deposition transcripts in search of evidence to support contentions); *Guthrie v. Suiter,* 934 S.W.2d 820, 826 (Tex.App.-Houston [1st Dist.] 1996, no writ)(holding that trial court did not abuse its discretion by refusing to consider a five hundred page deposition attached to the nonmovant's response when the nonmovant did not point out to the trial court where in the deposition the issues set forth in the response were raised). The trial court did not abuse its discretion by entering the order nor by sustaining Trujillo's objections. Issues Twenty–One through Twenty–Four are overruled.

Having overruled each of the issues applicable to Morales, we affirm the summary judgment.