**In the Matter of Raul G. SANCHEZ, Deceased, Twilah Sanchez, Appellants,**

**v.**

**State Office of Risk Management, a Self–Insured Government Entity, Appellee.**

No. 08–06–00058–CV.

Court of Appeals of Texas, El Paso.

March 22, 2007.

Rhett Hoestenbach, Austin, for Appellants.

Kerry V. O'Brien, Asst. Atty. General, Austin, for Appellee.

Before CHEW, C.J., McCLURE, and CARR, JJ.

*OPINION*

ANN CRAWFORD McCLURE,
Justice.

This is an appeal from a no-evidence summary judgment in favor of the State Office of Risk Management (SORM). At issue is whether Twilah Sanchez produced sufficient evidence to raise a genuine issue of material fact that her husband was not intoxicated at the time of his work-related accident. Because we conclude she did not, we affirm.

## FACTUAL SUMMARY

On November 15, 2002, Raul Sanchez was returning home from employment training in Beeville, Texas. He was involved in a single-car accident that left him paralyzed. While the actual time of the accident is uncertain, it likely occurred around 6:20 p.m.[1]

A State Trooper at the scene noticed an open container inside the vehicle and smelled the odor of alcohol. Once medical personnel arrived, Raul was transported to McCamey Hospital. He arrived at the emergency room at 8:20 p.m. and "alcohol breath" was noted in the medical record.

Two blood samples were drawn. A hospital laboratory blood test was performed around 11:05 p.m. and indicated a blood alcohol level of 0.112. A second sample was drawn between 11:30 p.m. and 12:30 a.m. This sample was tested by the Department of Public Safety and indicated a blood alcohol level of .09.

Raul died on April 15, 2003. Twilah Sanchez, his widow, filed a claim for workers' compensation. A contested case hearing was held to determine whether Raul was in a state of intoxication at the time of his accident. SORM presented the expert testimony of Dr. Eric G. Comstock, a medical toxicologist. Dr. Comstock has practiced in the area of medical toxicology for twenty-one years. Using retrograde extrapolation, Dr. Comstock opined that Raul had a blood alcohol concentration within the range of .16 to .18 at or about 7 p.m.

Sanchez presented her own expert, Dr. Lane Brunner. He testified it was impossible to perform retrograde extrapolation without knowing the type of alcohol Raul drank, whether he had ingested food, the amount of alcohol consumed, and the period of time during which it was consumed. Based on the information available, Dr. Brunner was unable to form an opinion as to whether or not Raul was intoxicated at the time of the accident.

The hearing officer concluded that Raul's "blood alcohol concentration level was greater than 0.08 at the time of the one-vehicle accident on November 15, 2002." An appeals panel affirmed. 2004 WL 3316056 (Tex.Work.Comp.Com.), Appeal No. 033362 decided February 17, 2004.

Sanchez sought judicial review of the appeals panel decision and filed suit in Crane County alleging that Raul was not intoxicated at the time of his accident. SORM filed a no-evidence motion for summary judgment arguing that Sanchez could not establish Raul was not intoxicated. In response, Sanchez claimed she had raised a fact issue as to whether the retrograde extrapolation evidence was trustworthy and reliable. SORM countered that Sanchez had the burden to prove Raul was not intoxicated, but her expert was unable to do so. Moreover, Sanchez had answered

---

1. Terry Swann was a passer-by who noticed Sanchez's overturned vehicle in a bar ditch. Swann arrived on the scene at approximately 6:20 p.m. Raul said he had been there for a while, but Swann noticed the vehicle was still warm and stuffy inside even though the weather outside was cool and a chill was moving in.

SORM's interrogatories stating she was "not aware of any credible evidence that establishes the blood alcohol concentration of Raul Sanchez at the time of the accident"and that she was "not aware of any credible test that has established or suggests that Raul Sanchez was or was not legally intoxicated at the time of the accident."

Sanchez brings two issues for review challenging the propriety of summary judgment. In Issue One, she contends she presented lay witness testimony that Raul was not intoxicated. In Issue Two, she argues that she presented expert testimony to rebut the presumption that Raul was intoxicated.

### STANDARD OF REVIEW

■■■ A no-evidence motion for summary judgment is essentially a pretrial directed verdict and we apply the same legal sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750 (Tex.2003). The movant must specifically state the elements as to which there is no evidence. *Aguilar v. Morales,* 162 S.W.3d 825, 834 (Tex.App.-El Paso 2005, pet. denied); *see* Tex.R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each element challenged in the motion. *Aguilar,* 162 S.W.3d at 834. We view the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *King Ranch,* 118 S.W.3d at 751.

■■■ A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element. *Id.* at 751. Less than a scintilla of evidence exists if the evidence is so weak as to create no more than a mere surmise or suspicion. But when the evidence rises to a level that enables reasonable minds to differ in their conclusions, then more than a scintilla of evidence exists. *Id.* Where the trial court does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Aguilar,* 162 S.W.3d at 835, *citing Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

### TEXAS WORKERS' COMPENSATION ACT

An insurance carrier is liable for an employee's injury without regard to fault or negligence if at the time of the injury, the employee is subject to the subtitle and the injury arose out of and in the course and scope of his employment. Tex.Lab. Code Ann. § 406.031 (Vernon 2006). A carrier is not liable for compensation if the injury occurred while the employee was in a state of intoxication. Tex.Lab.Code Ann. § 406.032(1)(A). Intoxication is defined as "having an alcohol concentration to qualify as intoxicated under Section 49.01(2), Penal Code; or not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body of an alcoholic beverage, as defined by Section 1.04, Alcoholic Beverage Code." Tex. Lab.Code Ann. § 401.013(a)(1) & (2)(A). Section 49.01(2) of the Penal Code defines intoxication as having an alcohol concentration of 0.08 or more. Tex.Penal Code Ann. § 49.01(2)(B)(Vernon 2003).

### INTOXICATION

■■■ Sanchez contends she elicited lay and expert witness testimony raising a genuine issue of material fact. Because her claim was denied at the administrative level, she had to establish that Raul was not intoxicated. *See American Interstate Ins. Co. v. Hinson,* 172 S.W.3d 108, 114 (Tex.App.-Beaumont 2005, pet. denied)(employee's claim denied at the ad-

ministrative level had the burden of providing by preponderance of the evidence that he was not intoxicated at the time of the accident); *see also March v. Victoria Lloyds Ins. Co.*, 773 S.W.2d 785, 791(Tex.App.-Fort Worth 1989, writ denied)(when evidence is presented that the accident occurred while the employee was intoxicated, it rebuts the presumption that the employee was in the course of his employment, and the employee then has the burden to prove the he was not intoxicated at the time of the injury); TEX.LAB. CODE ANN. § 410.303 (Vernon 2006).

SORM based its motion on the following grounds: (1) Plaintiff cannot show any proof that, at the time the injury occurred, the alcohol concentration of Raul Sanchez was not .08 or more, and (2) Plaintiff cannot show any proof that, at the time the injury occurred, Raul Sanchez was not without the normal use of mental and physical faculties as a result of consuming alcohol. The trial court did not specify upon which ground it based its decision. We turn now to the evidence.

### Twilah Sanchez

Sanchez testified that between 4 and 4:30 p.m., she received a telephone call from Raul. He anticipated arriving home around 8 p.m. Sanchez did not detect anything unusual about his speech, and he did not sound like he was intoxicated. Raul was a social drinker and regular alcohol consumption did not occur in their home. Even after the accident, Raul never mentioned he had been drinking.

Raul also placed a call to his daughter around 5:30 p.m. They had a normal conversation, and her daughter did not notice anything unusual about his speech or indicate she thought he might have been intoxicated.

### Terry Swann

Terry Swann was the first person at the scene of the accident. Swann was driving with his wife and grandson heading towards Del Rio. Between 6:15 and 6:20 p.m., he noticed a vehicle with its taillights on located on the side of the road. Swann slowed down and observed another vehicle located in the bar ditch. He stopped and backed up towards the overturned vehicle. The vehicle that was on the side of the road then went on its way.

Swann found Raul's vehicle rolled over on its top. He broke one of the side windows and crawled inside. Raul was stretched out with the back of his head against a window. The inside of the vehicle was a mess with clothes and paperwork everywhere. Swann saw a beer can lying on the front windshield. He picked it up and tossed it out the way, but he could not remember whether he shook it or smelled it.

Swann asked Raul his name, where he was headed, and where he worked. Raul's responses were labored because of his position and possibly because he was paralyzed. Swann had personal experience with paralyzed individuals because his nephew is a quadriplegic. Swann knew that a person's diaphragm is affected when there is a spinal cord injury. He did not detect any slurred speech and Raul understood the questions asked.

Swann did not believed Raul was intoxicated and he did not detect an odor of alcohol. He came within sixteen inches of Raul's face in order to wipe blood from his eye. Swann was at the scene for at least thirty minutes until the emergency responders arrived.

### Dr. Lane Brunner

Dr. Lane Brunner has been an associate professor of Pharmaceutics in the College

of Pharmacy at the University of Texas at Austin for more than seven years. He explained that retrograde extrapolation requires knowledge of metabolic rate, when the absorption process occurred, the time period over which the alcohol was ingested, the type of alcoholic beverage ingested, and whether any food had been consumed. Without these factors, one cannot understand the rate of absorption or estimate when the peak concentration would occur.[2] Since he did not have information regarding these relevant factors, he was unable to determine whether Raul was intoxicated at the time of the accident.[3]

### Lay Witness Analysis

In her first issue, Sanchez contends the lay witness testimony raised a genuine issue of material fact that Raul was not intoxicated at the time of the accident. She argues that although a positive drug test can shift the burden of proof to the claimant, it does not in and of itself compel a finding of intoxication. 2004 WL 742515 (Tex.Work.Comp.Com.), Appeal No. 040004, decided February 25, 2004. The panel decision is distinguishable because the claimant there was allegedly intoxicated as a result of a controlled substance and not alcohol.

To establish an individual was intoxicated as a result of the voluntary introduction into the body of a controlled substance, the carrier need only provide evidence that the claimant did not have the normal use of this mental and physical faculties. *See* Tex.Lab.Code Ann. § 401.013(a)(2)(B). Unlike cases involving alcohol, there is no *per se* level that establishes when a person is intoxicated. *See Hinson*, 172 S.W.3d at 115. The Legislature has established a rebuttable presumption of intoxication when the presence of a controlled substance is indicated by a blood test or urinalysis. *See* Tex.Lab.Code Ann. § 401.013(c). No such presumption is articulated for blood alcohol tests. See *id.* Therefore, the statutory standard for controlled substances is relatively subjective. *See* Tex.Lab.Code Ann. § 401.013(a)(2); *Hinson*, 172 S.W.3d at 115.

To the contrary, when a carrier seeks to establish a claimant was intoxicated due to alcohol, it must provide evidence of either: (1) alcohol concentration of .08 or greater, or (2) the lack of normal use of mental and physical faculties. *See* Tex. Lab.Code Ann. § 401.013(a)(1) & (2). Here, the appeals panel affirmed the hearing officer's determination that Raul's blood alcohol concentration level was greater than .08 at the time of the acci-

---

**2.** Retrograde extrapolation is the computation back in time of blood-alcohol level, which is an estimation of the level at the time of driving based on a test result from some later time. *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex.Crim.App.2001). Absorption occurs once the consumed alcohol passes through the stomach, the intestines, and into the blood. *Id.* at 909. After a person stops drinking, the blood alcohol concentration will reach a peak, after which the blood alcohol concentration will begin to fall as the alcohol is eliminated from the body. *Id.*

**3.** Dr. Brunner's expert report states the same conclusion. "Based on the information provided it is my opinion that an accurate estimate of Mr. Sanchez's blood alcohol concentration at the time of the incident is not possible. Too many important factors remain unknown such as the type and amount of alcohol consumed, the timeframe that the alcohol was consumed, and whether or not food was ingested before, during, or after drinking. Without this information, or at least scientifically reasonable estimates of this information, determination of Mr. Sanchez's blood alcohol level at the time of the accident cannot be made."

dent. Once SORM established Raul had an alcohol concentration of .08 or more, by definition he was intoxicated. *See id.* § 401.013(a)(1).

To escape summary judgment, Sanchez had to raise a genuine issue of material fact that Raul was not intoxicated by presenting evidence that the blood alcohol content was less than .08. Neither Sanchez nor Swann testimony provided such evidence. We overrule Issue One.

### Expert Witness Analysis

In her second issue, Sanchez argues she presented expert testimony to rebut the presumption of intoxication because she challenged the reliability of Dr. Comstock's analysis. She contends that the reliability of retrograde extrapolation must be considered in light of the relevant factors articulated in *Mata v. State,* 46 S.W.3d 902 (Tex.Crim.App.2001).

In *Mata,* the Court of Criminal Appeals held that where a single test was conducted some time after the offense, an expert could create a reliable estimate of a defendant's blood alcohol content, only if the expert had knowledge of the defendant's personal characteristics and behaviors. *Id.* at 916. The court identified a list of factors to consider regarding the reliability of retrograde extrapolation, such as the length of time between the offense and tests administered, the number of tests given and the length of time between each test, and to what extent individual characteristics of the defendant were known to the expert. *Id.* Examples of individual characteristics are a person's weight and gender, his typical drinking pattern and tolerance of alcohol, how much he had to drink on the day in question, what he drank, the duration of the drinking spree, the time of the last drink, and how much and what he ate either before, during, or after drinking. *Id.*

Sanchez maintains that Dr. Comstock's retrograde extrapolation was unreliable because he admitted he did not know Raul's individual characteristics. Because she offered evidence contradicting Dr. Comstock's analysis, she claims she has raised a genuine issue of material fact that Raul was not intoxicated. We disagree. Dr. Brunner condemned Dr. Comstock's retrograde extrapolation analysis as unreliable in establishing intoxication. The issue on appeal is not whether Raul *was* intoxicated, but whether Sanchez presented evidence that he *was not* intoxicated.

Dr. Brunner never testified that Raul's blood alcohol level was less than 0.08. Instead, he testified he could not offer an opinion as to whether or not Raul was intoxicated. Since Sanchez has not presented any evidence raising a genuine issue of material fact that Raul's level of intoxication was less than 0.08, we may affirm on this ground alone. We need not determine whether Sanchez produced more than a scintilla of evidence that Raul exhibited the normal use of his mental and physical faculties. 2004 WL 2932818 (Tex. Work.Comp .Com.), Appeal No. 042113, decided October 11, 2004 (an alcohol concentration of .08 or more is by definition intoxication and there need be no further analysis of whether the claimant had the "normal use" of his faculties.). We overrule Issues Two and affirm the judgment of the trial court.