

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-12-00507-CV
_____

BITUMINOUS FIRE & MARINE INSURANCE
COMPANY, APPELLANT

V.

RICARDO RUEL, APPELLEE

On Appeal from the 237th District Court
Lubbock County, Texas
Trial Court No. 2011-557,154; Honorable Les Hatch, Presiding

June 4, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This is an appeal from a workers' compensation case in which a jury found Appellee, Ricardo Ruel, was not intoxicated when he sustained injuries from an electrical explosion. Appellant, Bituminous Fire & Marine Insurance Company, asserts the judgment erroneously finds Ruel (1) was not intoxicated at the time of his injury, (2)

suffered a compensable injury and (3) has a disability because the findings are not supported by legally sufficient evidence. We affirm.

## BACKGROUND

On September 17, 2010, Ruel, a journeyman electrician and employee of the Lubbock Electric Company (LEC), was assigned the task of moving and replacing wiring to increase the power of a fan motor at the Slaton Cotton Gin. After rewiring the motor, he and Victor Rotramel, a master electrician and co-worker, were replacing a cover on a trough containing live wiring when an electrical explosion occurred injuring both employees. Ruel was taken by EMS to a nearby hospital where he was treated for electrical burns. Prior to treatment, Ruel provided a urine sample which tested positive for benzoylecgonine, a cocaine byproduct remaining in the human body after the drug is metabolized.[1] The test results were confirmed by a more detailed analysis. Other than the urinalysis, neither Ruel's EMS nor hospital records indicate he exhibited any abnormal behavior.

Ruel filed a claim for insurance coverage with the Texas Department of Insurance, Division of Worker's Compensation. Based on his urinalysis test results, Bituminous, LEC's insurance carrier, asserted Ruel was intoxicated at the time of the accident and denied coverage. A contested case hearing was held, and a hearing officer determined Ruel was intoxicated at the time of his injury and did not suffer a compensable injury. The Texas Workers' Compensation Commission Appeals Panel affirmed the hearing officer's determination. Thereafter, Ruel sought judicial review of

---

[1] The tests revealed a minimum level of benzoylecgonine in his urine triggering positive results.

the Appeals Panel's final decision. *See* TEX. LAB. CODE ANN. §§ 410.251-.308 (West 2006 & West Supp. 2013).

At trial, Ricardo Villareal, Ruel's supervisor, testified he spoke to and observed Ruel the morning of the accident while Ruel was drinking coffee and loading trucks. Villareal testified he noticed "[n]othing out of the ordinary . . . [Ruel] seemed normal to me, fit for duty, like an everyday person."

Rotramel observed Ruel from approximately 7:00 a.m. when the pair began loading their truck in preparation for their task at the Gin until the accident at approximately 10:30 a.m. When the two were attempting to replace a cover on a trough filled with wires and debris,[2] there was a flash of light. Both were burned, and Rotramel's shirt was set afire. Rotramel immediately fell to the floor, and Ruel batted the flames on his shirt until they were extinguished. Ruel then helped him to his feet, and they sought assistance. Rotramel opined that, at the time of the accident, they were following standard procedure and Ruel used ordinary care during the replacement process. He also testified that, in his opinion, Ruel was fit for duty the day of the accident.

Ruel corroborated Rotramel's testimony. He testified, when the explosion occurred, he was disoriented, saw Rotramel was afire and immediately began patting

---

[2] Rotramel described the troughs as containing large quantities of rat nests, dead rodents and cotton dust/lint. He testified the troughs were so full of wiring, there was a risk of pinching a live wire when the covers were replaced even though they had taken precautions by pushing the wires down with slats of wood—a process they had used before. He indicated electricians commonly worked at the Gin when the wires in the troughs were live because the Gin did not want to stop operations and the troughs would likely be cleaned only when the Gin was completely rewired—an expense that could cost as much as a million dollars.

him down while trying to remove his co-worker's burning shirt. He explained the most likely cause for the arc or explosion was a screw coming too close to one of the hot wires crammed into the trough as he attached the cover using an electric drill. He testified that the Tuesday night before the Friday morning accident, he did two lines of cocaine at various times during the night and drank six beers. He took Wednesday morning off work because he was hung over but showed up at work after lunch. He worked Thursday and, on Friday morning, he testified he had the normal use of his mental and physical faculties.

Bituminous's expert, Dr. Jim Kelaher, a physician and Baylor College of Medicine's Director of Occupational Health, opined that the effect of the cocaine taken by Ruel on Tuesday was amplified by the alcohol he consumed and, based on his urinalysis test results, Ruel was intoxicated at the time of the accident. During cross-examination, however, he agreed that, because he could not identify the quantity of cocaine or the method it was ingested by Ruel, it was not possible to do a retrograde extrapolation.[3] He also agreed that a urine test alone cannot determine a person's specific behavior at a given point in time.

Ruel's rebuttal expert, Harold Miller, a forensic toxicologist and associate professor of pharmaceutical sciences at Texas Tech Health Sciences Center School of Pharmacy, opined that, after reviewing Ruel's urinalysis test results and medical records, he was unable to determine whether Ruel had the normal use of his mental or physical faculties at the time of the accident. He opined that a toxicologist would need

---

[3] "Retrograde extrapolation is the computation back in time of [a level of alcohol or controlled substance consumption], which is an estimation of the level at the time of [consumption] based on a test result from some later time." *Sanchez v. State Office of Risk Mgmt.,* 234 S.W.3d 96, 100 n.2 (Tex. App.—El Paso 2007, no pet.) (citing *Mata v. State*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001)).

4

more information than a urinalysis to determine whether a person was intoxicated from cocaine ingestion at any particular time. He testified the effects of cocaine vary from person to person and depends, in part, on the amount and method of ingestion. He also testified the effects of cocaine only last a few hours and typically after the passage of several days, he "seriously" doubted whether anyone could distinguish whether someone had used cocaine at all.

At the trial's conclusion, the jury found "that [Ruel] was not intoxicated at the time of his injury at work on September 17, 2010." Thereafter, the trial court issued its judgment finding Ruel was not in a state of intoxication at the time he was injured, suffered a compensable injury and was disabled beginning September 18, 2010, through January 28, 2011. This appeal followed.

## DISCUSSION

By its first issue, Bituminous asserts the evidence supporting the jury's determination that Ruel was not intoxicated at the time of the accident is legally insufficient. By its second and third issues, Bituminous contends that, because Ruel was intoxicated at the time of the accident, he did not sustain a compensable injury and did not incur a disability. We disagree.

## ISSUE ONE—LEGAL SUFFICIENCY

### STANDARD OF REVIEW

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or

5

of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied,* 526 U.S. 1040, 119 S.Ct. 1336, 145 L.Ed.2d 500 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a reasonable fact finder could not. *Central Ready Mix Concrete Co. v. Islas,* 228 S.W.3d 649, 651 (Tex. 2007). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex. 1996).[4]

Under the Workers' Compensation Act (Act), an insurance carrier is liable for compensation for an employee's injury if the injury arises out of and in the course and scope of employment, TEX. LAB. CODE ANN. § 406.031 (West 2006), without regard to fault or negligence*. Id. See Sanchez v. State Office of Risk Mgmt.*, 234 S.W.3d 96, 99 (Tex. App.—El Paso 2007, no pet.).[5]

**APPEALS UNDER THE WORKERS' COMPENSATION ACT**

A TWCC Appeals Panel's final decision may be appealed to the courts under a modified *de novo* review. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504,

---

[4] Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied,* 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

[5] Bituminous does not assert Ruel's injuries did not arise out of and in the course and scope of his employment or that Ruel was at fault or negligent.

515 (Tex. 1995).  Under this modified *de novo* review, all issues of compensability may be tried by a jury or court.  *Id.* at 528-29*.  See* TEX. LAB. CODE ANN. §§ 410.301-.304 (West 2006).  Although the court is informed of the Appeals Panel's decision, the court is not required to accord it any particular weight.  893 S.W.2d at 515.  The fact finder does not review the Appeals Panel's decision for "reasonableness but rather independently decides the issues by a preponderance of evidence."  *Id.* at 531.  The party appealing the Appeals Panel's ruling bears the burden of proof by a preponderance of evidence.  *See* TEX. LAB. CODE ANN. § 410.303 (West 2006). Because his claim was denied at the administrative level, Ruel had the burden at trial of proving he was not intoxicated at the time of the electrical explosion by a preponderance of evidence.  *See id.*

**INTOXICATION**

Under the Act, an insurance carrier is not liable for compensation if an injury occurs while the employee is in a state of intoxication.  *See* TEX. LAB. CODE ANN. § 406.023(1)(A) (West 2006).  "Intoxication" means the state of (1) having an alcohol concentration to qualify as intoxicated under section 49.01(2) of the Texas Penal Code; or (2) not having the normal use of mental or physical faculties resulting from voluntary ingestion of an alcoholic beverage or a controlled substance under section 481.002 of the Texas Health and Safety Code.  *See id.* at § 401.013(a).  Cocaine is such a controlled substance.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(5), (6), (29)(D) (West Supp. 2013).  Because this case does not involve a question of blood-alcohol concentration, for our purposes, "intoxication" is defined as the *state* of not having the

normal use of mental or physical faculties due to voluntary ingestion of cocaine into the body.

Unlike alcohol consumption, there is no level or test defined by statute that establishes *per se* if a person has lost use of his or her physical and mental faculties due to the ingestion of a controlled substance. *Am. Interstate Ins. Co. v. Hinson,* 172 S.W.3d 108, 115 (Tex. App.—Beaumont 2005, pet. denied). The standard for cocaine is relatively subjective. *Id. See also* TEX. LAB. CODE ANN. § 401.013(a)(2) (West 2006). Thus, the issue in a compensation case involving the allegation of intoxication by a controlled substance like cocaine is not whether the substance was to some degree, however slight, in the claimant's body at the time of the accident, but rather whether the claimant was physically or mentally impaired *at the time* the accident occurred as a result of having ingested the controlled substance. *Am. Interstate Ins. Co.,* 172 S.W.3d at 115; *Dallas Nat'l Ins. Co. v. Lewis,* No. 01-10-00528-CV, 2011 Tex. App. LEXIS 4564, at *13 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.).

When the insurance carrier shows the voluntary ingestion of any substance listed under section 401.013 (a)(2)(B) based on a blood test or urine analysis, there arises "a rebuttable presumption that a person is intoxicated and does not have the normal use of mental or physical faculties." *See* TEX. LAB. CODE ANN. § 401.013(a)(2)(B), (c) (West 2006). Generally, an employee is presumed sober; however, when the carrier rebuts the presumption of sobriety with probative evidence of intoxication, the burden shifts to the employee to prove that he or she was not intoxicated at the time of the accident. *Tex. Mut. Ins. Co. v. Havard,* No. 01-07-00268-CV, 2008 Tex. App. LEXIS 1614, at *8 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.). In sum, because of

his positive post-accident urinalysis test, Ruel was required to rebut this statutory presumption and prove he was not intoxicated by a preponderance of the evidence at trial.

Ruel's supervisor and co-worker testified they had the opportunity to observe and speak with Ruel before the accident. Both testified he was fit for duty and acted normal. *See Dallas Nat'l Ins. Co.,* 2011 Tex. App. LEXIS 4564, at *11-12 (lay witnesses are competent to offer testimony as to whether a person acted normally); *Am. Interstate Ins. Co.,* 172 S.W.3d at 117 (normal behavior is observable and non-experts are competent to provide testimony relevant to whether a person acted normally). Other than the urinalysis test results showing minimum levels of benzoylecgonine in Ruel's urine sufficient to trigger a positive result for cocaine use, there was nothing in his EMS or hospital records indicating Ruel's behavior was anything other than normal. Miller, a forensic toxicologist, testified he was unable to determine whether Ruel had the normal use of his mental or physical faculties at the time of the accident based on Ruel's urinalysis tests results and medical records. He testified the effects of cocaine last only a few hours and vary from person to person. Typically after the passage of a few days, he doubted seriously whether one could distinguish whether a person had used cocaine at all. Although Kelaher disagreed with Miller's expert opinion, we may not invade the fact-finding role of the jurors, who alone determine the credibility of witnesses, the weight to be given their testimony and whether to accept or reject all or a part of their testimony. *City of Keller v. Wilson,* 168 S.W.3d 802, 819, 821-22 (Tex. 2005).

We find that a reasonable fact finder could conclude that Ruel was not intoxicated at the time of his injury as set forth in the jury charge given. Stated

differently, we believe the scientific and expert evidence introduced during the trial in this case did not conclusively establish that Ruel was intoxicated from a controlled substance at the time his injury occurred on September 17, 2010. Ruel rebutted the presumption of intoxication to the satisfaction of the jury and established by a preponderance of the evidence that he was not intoxicated at the time of the accident. Accordingly, we hold that the evidence is legally sufficient to support the jury's finding that Ruel was not intoxicated from a controlled substance at the time his injury occurred. *See Security Nat'l Ins. Co. v. Murrell,* No. 02-11-00155-CV, 2012 Tex. App. LEXIS 6370, at *11-16 (Tex. App.—Fort Worth Aug. 2, 2012, pet. denied) (mem. op.); *Dallas Nat'l Ins. Co.,* 2011 Tex. App. LEXIS 4564, at *14-16; *Tex. Mut. Ins. Co.,* 2008 Tex. App. LEXIS 1614, at *10-13. Accordingly, we overrule Bituminous's first issue and find issues two and three are pretermitted. TEX. R. APP. P. 47.1.

## CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice