COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| ALFREDO MORENO AND FRANCES MORENO, INDIVIDUALLY AND AS HEIRS AND REPRESENTATIVES OF THE ESTATE OF BERNADETTE MORENO, DECEASED, | § | |
| | § | No. 08-06-00134-CV |
| | § | Appeal from the |
| Appellants, | | |
| | § | 120th District Court |
| V. | | |
| | § | of El Paso County, Texas |
| JOSEPH A. QUINTANA, JR., M.D. AND EL PASO HEALTHCARE SYSTEM, LTD. D/B/A DEL SOL MEDICAL CENTER, | § | (TC# 2005-2771) |
| | § | |
| Appellees. | § | |

**O P I N I O N**

Alfredo and Frances Moreno, on behalf of their daughter Bernadette Moreno, appeal the trial court's orders granting summary judgments in favor of Dr. Joseph Quintana, M.D. and Del Sol Medical Center. We find that the trial court improperly granted both motions for summary judgment, and we reverse the court's take-nothing judgments and remand the case for trial.

Bernadette Moreno arrived at Del Sol Medical Center in El Paso on February 11, 2003, in hypertensive crisis, under the care of Dr. Edward Juarez. Shortly after midnight, Ms. Moreno was transferred to the intensive care unit by Physician Assistant Roy Malphurs due to uncontrolled hypertension and respiratory distress. Her respiratory rate was between thirty-five and forty, with low oxygen saturation in her blood, and her blood pressure was recorded at

190/110. At 3 a.m., Nurse Ruddy re-recorded Ms. Moreno's vital signs. According to her chart, Ms. Moreno's blood pressure had risen to 205 over 126, her heart rate was 124 beats per minute, she had a respiratory rate of forty, and a blood oxygen saturation of 90 percent. Nurse Ruddy contacted Cardiologist Dr. Joseph Quintana to consult on Ms. Moreno's case. Dr. Quintana returned Nurse Ruddy's page at 3:30 a.m. He accepted the consultation for Ms. Moreno's hypertension and ordered medication to reduce her blood pressure, but did not got to the hospital to examine her in person. Ms. Moreno's blood pressure remained above desirable levels until between 5 and 5:30 a.m.

At 9:55 a.m., contrast dye was administered in preparation for a cat-scan. At 10:25 a.m., Ms. Moreno was in emergency respiratory distress due to congestive heart failure. Dr. Adolfo Palomino ordered several medications, including versed and two doses of succinylcholine to prepare Ms. Moreno for intubation. Succinylcholine is used to paralyze the patient's diaphragm for intubation, and because of this, the patient is unable to breathe until the tube is properly placed. Ms. Moreno was pronounced dead at 10:58 a.m., after she went into a pulseless electrical heart rhythm, following complications when Dr. Palomino was unable to re-establish an airway.

Alfredo and Frances Moreno, as representatives of the estate of Bernadette Moreno ("the Morenos"), filed a medical malpractice suit against Dr. Quintana and El Paso Healthcare System, Ltd. d/b/a Del Sol Medical Center on April 25, 2005. Both Dr. Quintana and Del Sol answered the suit and filed independent hybrid motions for summary judgment. The Morenos timely filed their responses to both motions and produced summary judgment evidence on the challenged elements of breach and proximate cause. Dr. Quintana filed numerous objections to the Morenos' summary judgment evidence, including objections to the affidavit evidence and

deposition testimony of the Morenos' medical expert witness Dr. David Ostrander and objections to his own deposition testimony.

By written order dated March 23, 2006, the trial court sustained Dr. Quintana's objections and excluded Dr. Ostrander's affidavit and deposition from consideration. The court also sustained Dr. Quintana's objection to the Morenos' supplement to their summary judgment response and struck documentary evidence of Dr. Quintana's orders for Ms. Moreno's treatment on February 12. On the same day, the trial court granted summary judgment for Dr. Quintana specifically on no-evidence grounds and entered a take-nothing judgment against the Morenos. The court also granted Del Sol's motion for summary judgment, although without specifying on what basis, and entered another take-nothing judgment.

The Morenos raise four issues on appeal. In Issues One and Two, the Morenos contend the trial court abused its discretion by sustaining the objections to Dr. Ostrander and Dr. Quintana's affidavit and deposition testimony. The Morenos contend the evidence was admissible, and therefore should have been considered as part of their summary judgment response. In Issues Three and Four, the Morenos challenge the trial court's summary judgments in favor of Dr. Quintana and Del Sol.

In Issue One, the Morenos contend that the trial court erred in sustaining Dr. Quintana's objections to the affidavit of expert witness, Dr. David Ostrander. Rulings on the admission or exclusion of summary judgment evidence are reviewed under an abuse of discretion standard. *Barraza v. Eureka Co., A Division of White Consolidation Industries, Inc.*, 25 S.W.3d 225, 228 (Tex.App.--El Paso 2000, pet. denied). A trial court abuses its discretion when the trial court fails to act in accordance to guiding rules or principles. *Bowie Memorial Hosp. v. Wright*, 79

S.W.3d 48, 52 (Tex. 2002).

In its ruling on Dr. Quintana's objections, the trial court specified it was sustaining Dr. Quintana's objection to Dr. Ostrander's affidavit, because the affidavit "misrepresents Dr. Quintana's deposition testimony" and "does not consider Dr. Quintana's sworn deposition errata page and the sworn supplementation to Dr. Quintana's deposition testimony." The trial court does not specify what "misrepresentation" it concluded was sufficient to warrant excluding an otherwise uncontested expert opinion from consideration. However, Dr. Quintana purports a misrepresentation exists in the difference between his own deposition and Dr. Ostrander's opinion testimony; specifically, Dr. Ostrander's opinion that Ms. Moreno's death was caused, in part, by the delay in treating Ms. Moreno due to Dr. Quintana's failure to see her in the hospital, as compared to Dr. Quintana's own deposition testimony that he may have treated Ms. Moreno differently and more aggressively, had Nurse Ruddy told him how severe Ms. Moreno's vitals were. The record does demonstrate that Dr. Quintana exercised his right to clarify his deposition testimony on numerous occasions prior to summary judgment, thereby preserving his disputes with Dr. Ostrander's opinions and interpretations of the record for the fact finder to resolve. Dr. Quintana has failed to cite, however, and we have been unable to locate Texas precedent holding that an otherwise unchallenged expert affidavit is subject to exclusion from evidence during summary judgment proceedings for "misrepresenting" another witnesses testimony, or for allegedly failing to consider another witness's clarifications of his testimony, or any other part of the record in general.

Indeed, under either summary judgment standard, the court is required to view the evidence in the light most favorable to the non-movant and indulge all inferences and resolve all

doubts in the non-movant's favor. *See Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). As such, it was the trial court's duty to disregard Dr. Quintana's disputes with Dr. Ostrander's opinions, and view the evidence in the Morenos' favor alone. Ultimately, whether or not this type of evidentiary "misrepresentation" has occurred can only be answered when the fact finder determines what witnesses are credible and what weight to give their testimony. Similarly, whether or not Dr. Ostrander considered all, or part, of the appropriate evidence in coming to his expert opinions is a ripe subject for cross-examination. Such issues are for the fact finder alone, and therefore, cannot be properly addressed at summary judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 821-22 (Tex. 2005). Because there was no legal basis for the trial court's ruling, it abused its discretion by excluding Dr. Ostrander's affidavit on its stated basis. Issue One is sustained.

In Issue Two, the Morenos argue the trial court also abused its discretion by sustaining Dr. Quintana's objections to excerpts from Dr. Quintana's deposition testimony. The court sustained Dr. Quintana's objection to the Morenos' Exhibit 8, lines 11-19 of page 45 of Dr. Quintana's own deposition, which the Morenos included in their response to Dr. Quintana's motion for summary judgment. Exhibit 8 included the following grounds: (1) compound question; (2) Improper hypothetical; leaves out material facts; and (3) Improper standard, predicate; improper foundation; improper question of "probably" rather than "reasonable medical probability." The Morenos' entire discussion of this issue in their appellate brief consists of a single paragraph, in which they conclude based on a single citation to Texas Rule of Evidence 801(e)(2)(3), that the challenged deposition testimony consisted of admissions of a party opponent, and are therefore admissible. In addition, despite Dr. Quintana's argument that the

Morenos waived this argument by failing to properly brief the issue, the Morenos' reply brief contains no reference to the trial court's ruling on Exhibit 8.

Texas Rule of Appellate Procedure 38.1 provides the requirements for an appellant's brief. TEX.R.APP.P. 38.1. Subparagraph (i) provides that a brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX.R.APP.P. 38.1(i). Failure to adequately brief an argument results in waiver. *Riddle v. Unifund CCR Partners*, 298 S.W.3d 780, 783 n.1 (Tex.App.--El Paso 2009, no pet.). Because the Morenos have failed to provide a proper argument in support of their contention that the trial court's evidentiary ruling in this instance was an abuse of discretion, the issue has been waived. Because the trial court's ruling with regard to Exhibit 8 stands, the exhibit will not be considered as evidence in our review of the court's judgment. Issue Two is overruled.

We now turn to the merits of the trial court's summary judgment. In Issue Three, the Morenos contend the trial court erred by granting Dr. Quintana's no-evidence motion for summary judgment. A no-evidence motion for summary judgment is essentially a pretrial motion for directed verdict, and we apply the same legal sufficiency standard of review. *Gray v. Woodville Health Care Center*, 225 S.W.3d 613, 616 (Tex.App.--El Paso 2006, pet. denied). A no-evidence summary judgment movant must specify which essential elements are devoid of evidentiary support. *Aguilar v. Morales*, 162 S.W3d 825, 834 (Tex.App.--El Paso 2005, pet. denied). The burden then shifts to the non-movant to produce summary judgment evidence raising a genuine issue of material fact regarding each challenged element. *Aguilar*, 162 S.W.3d at 834. The non-movant meets this burden, thereby defeating the no-evidence motion by producing more than a mere scintilla of evidence in support of each challenged element. *See*

*Gray*, 225 S.W.3d at 616. A "scintilla" of evidence rises to the level that enables reasonable minds to differ in the conclusions to be drawn therefrom. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003). A no-evidence motion is properly granted when the non-movant fails to produce proper summary judgment evidence, or the evidence produced is so weak as to create no more than a mere surmise or suspicion. On appeal, we conduct a *de novo* review of the trial court's ruling to determine whether or not the non-movant's evidence demonstrated that a material fact issue exists on each of the challenged elements. *See King Ranch, Inc.*, 118 S.W.3d at 751. When conducting such a review, the appellate court must view the evidence in the light most favorable to the non-movant. *See Gray*, 225 S.W.3d at 616. When, as here, the trial court fails to specify which no-evidence ground served as the basis for its ruling, we must review each ground raised in the motion, and the judgment will be affirmed if any of the theories prove meritorious. *Id*. at 617.

The essential elements of a claim for medical malpractice are: (1) a duty by the physician to act according to a standard of care; (2) breach of that standard of care; (3) a causal connection between the alleged breach and the injury; and (4) injury or harm to the plaintiff. *See Linan v. Rosales*, 155 S.W.3d 298, 302 (Tex.App.--El Paso 2004, pet. denied). Dr. Quintana's motion challenged the breach and causation elements of the Morenos' cause of action. The Morenos responded by producing testimony by Dr. Ostrander, Dr. Quintana, and Nurse Ruddy in support of their argument that fact issues exist on both challenged elements.

We turn first to the breach element. Dr. Quintana asserts that there is no evidence that he breached the standard of care because the Morenos' primary expert witness on this issue, Dr. Ostrander, only speculated as to a breach "if" Dr. Quintana failed to personally attend to

Ms. Moreno in the hospital. Dr. Quintana concludes that because Dr. Ostrander's testimony was merely speculative, it cannot serve to raise a genuine issue of material fact. Because we disagree that the Morenos' response was strictly limited to Dr. Ostrander's statement as cited by Dr. Quintana, we conclude the Morenos' met their summary judgment burden on this issue.

Exhibit 4, attached to the Morenos' response, was Dr. Ostrander's expert affidavit. In the affidavit, Dr. Ostrander explained that he had reviewed all the pertinent medical records and statements, including those of Nurse James Ruddy in forming his opinions.

> Nurse James Ruddy called Dr. Joseph A. Quintana at 3:30 a.m. on February 12, 2003 to advise Dr. Quintana that he had been consulted regarding [Ms. Moreno]. Dr. Quintana accepted the consult and gave orders at this time for medication to lower [Ms. Moreno's] blood pressure. The standard of care required Nurse Ruddy to inform Dr. Quintana not only of [Ms. Moreno's] blood pressure, but also her heart rate, rate of respirations, oxygen saturation and history of desaturation requiring increasing doses of supplemental oxygen. Dr. Quintana testified that if he had been made aware of [Ms. Moreno's] respiratory rate and low oxygen saturation, he would have come to the hospital to see [Ms. Moreno]. Nurse Ruddy testified he believes he gave Dr. Quintana all the abnormal vital signs. Vital signs include the respiratory rate.
> If Nurse Ruddy failed to give Dr. Quintana the heart rate, blood pressure, respiratory rate, and oxygen saturation, and history of desaturation requiring increasing doses of supplemental oxygen, then his care fell below the standard of care and contributed to the delay in providing [Ms. Moreno] with necessary diagnostic and therapeutic care. If Dr. Quintana was aware of the heart rate, blood pressure, respiratory rate, oxygen saturation and history of desaturation, his failure timely to evaluate the patient and to order additional diagnostic studies, diuretics and bi-level positive airway pressure (BiPAP) breached the standard of care.

When we view Dr. Ostrander's affidavit more broadly than the single statement relied on by Dr. Quintana, a question of material fact becomes apparent. While Dr. Ostrander does conclude that absent proper communication from Nurse Ruddy, Dr. Quintana's actions were not a breach of the standard of care. Dr. Ostrander also specifically noted that Nurse Ruddy believed all necessary vitals had been given to Dr. Quintana at 3:30 a.m., making Dr. Quintana's inaction

a breach.  Dr. Ostrander's affidavit is supplemented by Exhibit 7 to the Morenos' response, which contains Nurse Ruddy's deposition.  According to Nurse Ruddy's deposition, Dr. Quintana was advised of the patient's vital signs when he spoke with Ruddy at 3:30 a.m.  On the other hand, Dr. Quintana's deposition attached to the response as Exhibit 8, indicates that based on the information given to him when he returned the hospital's page, he did not feel it was necessary to personally attend to Ms. Moreno.

When we take a comprehensive view of the evidence in the Morenos' response, it is apparent that the resolution of the issue of Dr. Quintana's alleged breach is dependant on the determination of what information Dr. Quintana was, or was not, given when he spoke with Nurse Ruddy at 3:30 a.m.  Answering that question depends on the credibility attributed to Nurse Ruddy's recollection, versus Dr. Quintana's.  Evaluations of witness weight and credibility are for the fact finder only, and therefore are not appropriate considerations on summary judgment. *See Wilson*, 168 S.W.3d at 821-22 (noting the deference given to the fact finder regarding witness credibility in a legal sufficiency review).  In the case before us, we are limited to viewing the evidence in the light most favorable to the Morenos, as the non-movants.  *See Gray*, 225 S.W.3d at 616-17.  Under such a light, we conclude the evidence could lead reasonable minds to differing conclusions regarding Dr. Quintana's alleged breach.  Accordingly, the Morenos' have met their summary judgment burden to raise a genuine issue of material fact on this issue, and summary judgment was not properly granted on this ground.

We now turn to Dr. Quintana's second challenged element:  proximate cause. Dr. Quintana moved for no-evidence summary judgment by challenging the proximate cause element solely on the basis that there was no evidence that the alleged breach was a cause-in-fact

of Ms. Moreno's death. The motion does not contain an argument regarding the foreseeability element of proximate cause. Specifically, Dr. Quintana argued that Dr. Ostrander's testimony conclusively established that Dr. Palomino's intubation attempts were the only proximate causes of Ms. Moreno's death regardless of Dr. Quintana's alleged breach.[1] Again, because we believe the evidence must be viewed more broadly, we disagree.

Proximate cause consists of two elements; cause-in-fact and foreseeablility. *Wyatt v. Longoria*, 33 S.W.3d 26, 32 (Tex.App.--El Paso 2000, no pet.). These elements cannot be established by mere conjecture, guess, or speculation. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798-99 (Tex. 2003). An act or omission is a cause-in-fact of the alleged harm or injury when it was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *Mason*, 143 S.W.3d at 799. While courts have recognized that proximate cause is generally a fact question, it may be a question of law when the evidence is undisputed, and where only one reasonable inference may be reasonably drawn. *Borrego v. City of El Paso*, 964 S.W.2d 954, 959 (Tex.App.--El Paso 1998, pet. denied).

According to Dr. Ostrander's affidavit and deposition testimony, Dr. Quintana's alleged breach contributed to the delay in treatment which lead to the need to intubate Ms. Moreno, and ultimately to her death. While Dr. Ostrander's affidavit does state that Ms. Moreno died from complications related to the intubation, he goes on to explain that assuming Dr. Quintana was given all of Ms. Moreno's vital signs during his conversation with Nurse Ruddy, Dr. Quintana's

---

[1] To the extent, the parties have re-framed this argument in their briefing to this Court to include other proximate cause doctrines, such as "superceding cause" or "new and independent cause." Those arguments were not presented to the trial court and have not been preserved for our review. *See* TEX.R.APP.P. 33.1(a).

failure to personally attend to Ms. Moreno and order more aggressive treatment lead to the need for intubation. In his deposition, Dr. Ostrander explained the connection between the need for more aggressive treatment and Ms. Moreno's deteriorating condition in more detail. Dr. Ostrander testified that Ms. Moreno was suffering from heart failure, a diagnosis that should have been made early in the evening, and which would have lead, according to the standard of care, to her being treated aggressively with a combination of BiPAP, diuretics, and blood pressure control. These treatments would have stabilized and improved her condition over night, ultimately erasing need for intubation.

In Dr. Quintana's own deposition, he also testified that based on the information recorded regarding Ms. Moreno's condition at 2:42 a.m., there may have been a need to change the initial approach to the case by seeing her personally, or ordering more testing. Again, based on the medical records, Dr. Quintana noted a need for more diuretics and anti-hypertensive medication to improve Ms. Moreno's condition before the need for intubation arose. While Dr. Quintana's testimony on these points was based on his review of Ms. Moreno's medical chart, rather than his own recollection of the information he received at the time he was assigned to the case, viewed in the light most favorable to the Morenos, the evidence is not legally conclusive. Because Dr. Quintana's testimony, combined with Dr. Ostrander's opinions could lead reasonable minds to different conclusions regarding the causes of Ms. Moreno's death, the Morenos met their no-evidence summary judgment burden on this issue. *See Gray*, 225 S.W.3d at 616-17. Therefore, the proximate cause element was not a proper basis for the trial court's judgment. *See Borrego*, 964 S.W.2d at 959.

Dr. Quintana's summary judgment motion also included a section in which he argued the

-11-

Morenos had no-evidence of their ability to recover certain types of damages. Regarding the Morenos' claim for loss of inheritance damages specifically, the issue has been conceded by the family. The balance of Dr. Quintana's arguments in this section of his summary judgment motion are based on the success of his challenges to the breach and proximate cause elements of the Morenos' cause of action. Given our conclusion that neither of the challenged elements provided a proper basis for summary judgment, summary judgment was not properly granted on the issue of recoverable damages.

In sum, having concluded that none of Dr. Quintana's grounds for no-evidence summary judgment support the trial court's judgment, Issue Three is sustained.

In Issue Four, the Morenos contend the trial court's summary judgment in Del Sol's favor was also improper. Del Sol moved for summary judgment on both traditional and no-evidence grounds. Each section of the hybrid motion contained two grounds for summary judgment. Under the no-evidence standard, Del Sol challenged the proximate cause element of the Morenos' medical malpractice cause of action, and also alleged that the Morenos' allegation that Physician Assistant Roy Malphurs was negligently credentialed by the hospital was unsupported by evidence of malice. Under the traditional summary judgment standard, Del Sol argued the "negligent credentialing cause of action" asserted by the Morenos was not recognized in Texas. In the alternative, to the extent such a cause of action was a basis for liability, the hospital claimed immunity under Texas Occupations Code Section 160.010, because there is no evidence that the physicians assistant who attended to Ms. Moreno was given hospital privileges with malicious intent. Because our analysis of Del Sol's traditional grounds will dispose of the majority of the summary judgment, we will address those grounds first.

As with any summary judgment ruling, a traditional summary judgment is subject to *de novo* review. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). To succeed on a tradition motion for summary judgment, the movant must establish that there is no genuine issue of material fact so that judgment should be granted as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). Summary judgment is therefore properly granted if the defendant disproves at least one essential element of the plaintiff's cause of action, or establishes all essential elements of an affirmative defense. *See D. Houston, Inc. v. Love* , 92 S.W.3d 450, 454 (Tex. 2002); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001). If the movant is successful in establishing its right to judgment as a matter of law, the burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). As in a review under the no-evidence standard, the reviewing court will take as true all competent evidence favorable to the non-movant, indulge every reasonable inference, and resolve any doubts in the non-movant's favor. *See Grant*, 73 S.W.3d at 215. Unlike a no-evidence motion however, a traditional motion for summary judgment must stand or fall on its own merit, there is no right to a traditional summary judgment by default. *See City of Houston*, 589 S.W.2d at 678.

The primary issue at summary judgment regarding the Morenos' claims against the hospital revolves around the existence and elements of a "negligent credentialing" cause of action. At the time the trial court granted Del Sol's motion, the Morenos' Fourth Amended Original Petition was the live pleading in the case. The Morenos' alleged the hospital was negligent by:

(a)     Failing to properly train and supervise the nurses who cared for [Ms.

-13-

Moreno] in its intensive care unit on February 12, 2003.

(b)     Failing to properly assess [Ms. Moreno].

(c)     Failing to properly monitor [Ms. Moreno].

(d)     Failing to keep [Ms. Moreno's] physicians or their designated healthcare
         provider employees timely advised of [Ms. Moreno's] condition.

(e)     Failing to properly evaluate Roy Malphurs, P.A. to determine his ability to
         evaluate and treat a patient like [Ms. Moreno] and other similarly situated
         patients while being aware that intensive care patients are at high risk of
         injury and require the highest level of care;

(f)     Allowing Roy Malphurs, P.A. to treat patients in the ICU;

(g)     Failing to define and limit Roy Malphurs, [sic] P.A., scope of practice, and

(h)     Failing to timely call an anesthesiologist or pulmonolgist to intubate [Ms.
         Moreno].[2]

The first question we must address, as argued by Del Sol, is whether "negligent

credentialing" is recognized as a cause of action in the State of Texas.  The hospital relies on two

Texas Supreme Court cases for the proposition that negligent credentialing has never been

recognized as a cause of action in this state; *St. Luke's Episcopal Hosp. v. Agbors*, 952 S.W.2d

503 (Tex. 1997) and *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212 (Tex. 2005).  In *Agbor*, the

Court held that the Texas Medical Practice Act applied to a patient's cause of action against a

---

[2] The hospital's summary judgment arguments focused exclusively on the allegations
dealing specifically with Physician Assistant Malphurs, and the hospital's alleged negligence
surrounding the management of his practice.  The same is true in Del Sol's briefing to this Court.
The Morenos have limited their response to the hospital's arguments.  Accordingly, we will
address Issue Four as it has been presented to us.  However, it is important to note that the
balance of the Morenos' medical negligence allegations against the hospital went unchallenged
by the hospital's summary judgment.  Accordingly, regardless of the propriety of the "negligent
credentialing" allegations, we question the trial court's entry of a final, take-nothing judgment
against the Morenos when many of their allegations against the hospital went unchallenged
during the summary judgment proceedings.

hospital for negligently credentialing a physician. *Agbors*, 952 S.W.2d at 504. The Agbor family sued the hospital where their son suffered permanently disabling injuries during his delivery. *Id*. The Agbors alleged the hospital was negligent and grossly negligent for credentialing the physician who delivered the baby. *Id*. The hospital moved for summary judgment under former Article 4495b, §§ 1.01-6.13, arguing that the Texas Medical Practice Act provided immunity for credentialing decisions by health care entities absent malice. *Id*. While the Court did not expressly recognize "negligent credentialing" as an independent cause of action, it did state that the Texas Medical Practice Act provided that malice was the "threshold standard" for a cause of action against a hospital for its "credentialing activities." *Id*. at 509.

The Court revisited the issue in 2005 in *Romero*. In *Romero*, the claimant sued the defendant hospital for "malicious credentialing" of a surgeon, whom they alleged negligently delayed a blood transfusion during surgery. *Romero*, 166 S.W.3d at 214. Although the Court's discussion was focused on whether the jury was properly charged on the issue of the hospital's alleged negligent credentialing of the surgeon, in its discussion the Court explained, "[i]n Texas, by statute, a hospital is not liable for improperly credentialing a physician through its peer review process unless the hospital acts with malice . . . ." *Id*. at 214 n.1, *citing* TEX.OCC.CODE ANN. § 160.010(b) & (c)(formerly TEX.REV.CIV.STAT.ANN. art. 4495b, § 5.06(*l*)-(m); Act of June 1, 1987, 70th Leg., R.S., ch 596, § 18, 1987 TEX.GEN.LAWS 2325, 2335). Again, while not expressly acknowledging a cause of action for negligently credentialing, the Court noted the difficulty a claimant faces in accessing evidence of malicious credentialing. *Romero*, 166 S.W.3d at 224-25.

Although not cited by Del Sol, the Texas Supreme Court revisited the issue of negligent

credentialing again in 2004, in *Garland Community Hosp. v. Rose*, 156 S.W.3d 541 (Tex. 2004)(orig. proceeding).  This case came to the Court on a petition for writ of mandamus involving the medical expert report requirement in former Article 4591i.  *See Rose*, 156 S.W.3d at 542.  In the underlying suit, the claimant sued the defendant hospital for negligently credentialing a doctor who performed a cosmetic surgery.  *Id*.  The issue before the Court was whether "negligent credentialing" was a healthcare liability claim subject to the medical expert report requirements of the Texas Medical Liability and Insurance Improvement Act.[3]  *Id*.  In footnote one, the Court noted that it had never formally recognized the existence of a common-law cause of action for negligent credentialing, but concluded it would assume such a claim existed for the purposes of the case.  *Id*. at 542 n.1, *citing Agbor*, 952 S.W.2d at 508.  In its analysis of negligent credentialing as a health care liability claim, the Court discussed the process and purposes of a hospital's credentialing practices.  The Court explained:

> Furthermore, the Hospital's credentialing activities are an inseparable part of the medical services [the plaintiff] received.  One of a hospital's primary functions is to provide a place in which doctors dispense health care services.  The quality of a health care provider's medical staff is intimately connected with patient care.  A hospital's credentialing of doctors is necessary to that core function and is, therefore, an inseparable part of the heath care rendered to patients.

*Rose*, 156 S.W.3d at 545.

The Court also noted "a negligent credentialing claim involves a specialized standard of care," for which "[t]he health care industry has developed various guidelines to govern a hospital's credentialing process."  *Rose*, 156 S.W.3d at 546.  Ultimately, the Court concluded

---

[3] Article 4590i has since been replaced by Chapter 74 of the Texas Civil Practice and Remedies Code.  Act of June 2, 2003, 78th Leg., ch. 204, § 10.01, 2003 TEX.GEN.LAWS 847, 884 (now codified at TEX.CIV.PRAC.&REM.CODE ANN. §§ 74.001-.507 (Vernon 2003)).

that negligent credentialing claims "involve a claimed departure from an accepted standard of health care" and thereby, concluded such claims did fall within the definition of "health care liability claims." *Id.*

From the combined discussions in these three cases, we conclude that although Texas may not formally recognize an independent, common law, cause of action for negligent credentialing, such allegations are recognized by Texas courts and by statutory authority as actionable theories of liability in medical negligence cases. Were we to hold such claims are not permitted by Texas law, the effect would be to eviscerate several provisions of the Texas Occupations Code (one of which is the basis for Del Sol's second argument), and we would be ignoring binding precedent from the Texas Supreme Court. Negligent credentialing is a viable theory of liability for medical negligence on the part of a health care entity, which fails to abide by the specialized standard of care and industry guidelines, which govern the credentialing process for medical staff. *See id.* at 545-46. Given this conclusion, summary judgment was not properly granted on the basis that negligent credentialing is not recognized as a basis of liability in Texas.

We now turn to whether or not the negligent credentialing theory, as alleged by the Morenos, incorporates the burden to prove malice as required by Texas Occupations Code Section 160.010. Subparagraph (b) of Section 160.010 provides:

> (b)     A cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of medical peer review.

TEX.OCC.CODE ANN. § 160.010(b)(Vernon 2004).

This provision has been held to provide immunity for health care entities and physicians absent allegations of malice in the credentialing process. *See Agbor*, 952 S.W.2d at 505-06, 509 (applying former version of Section 160.010(b) and (c)). Del Sol argues the immunity and associated malice requirement also applies when the allegedly negligently credentialed individual is a physician assistant. Because the Morenos neither alleged Physician Assistant Malphurs was maliciously credentialed, nor produced evidence of malice in Del Sol's credentialing procedures, the hospital concludes it was entitled to summary judgment.

The applicability of this provision to a physician assistant is a question of statutory construction. Our primary objective is to determine the Legislature's intent in enacting a particular provision, and to give that provision its intended effect. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We must interpret the statute according to the plain meaning of the language used, and must read the statute as a whole without giving effect to certain provisions at the expense of others. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *In re J.I.M.*, 281 S.W.3d 504, 507 (Tex.App.--El Paso 2008, pet. denied). Each word, phrase, or expression must be read as if it were deliberately chosen, and we will presume that words excluded from a provision were excluded purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex.App.--Austin 2002, pet. denied).

We turn first to the structure of the Texas Occupations Code. Section 160.010 is contained in Subtitle B of Title 3. *See* TEX.OCC.CODE ANN. § 160.010 (Vernon 2004). Title 3 governs "Health Professions." Within Title 3 are several subtitles including: Subtitle A "Provisions Applying to Health Professions Generally;" Subtitle B "Physicians;" and Subtitle C "Other Professions Performing Medical Procedures." *See* TEX.OCC.CODE ANN. Title 3 "Health

Professions" (Vernon 2004). While Section 160.010 is contained in Subtitle B, specifically applicable to physicians, Subtitle C contains Chapter 204, also known as "The Physician Assistant Licensing Act" ("the Act"). *See* TEX.OCC.CODE ANN. § 204.001 (Vernon 2004). Similar to the provisions for the governance of physicians in Subtitle B, the Act includes provisions establishing and defining the duties of the Physician Assistant Board, provides the licensing and eligibility requirements for individuals who seek to practice as a physician assistant in Texas, defined the scope of a physician assistant's practice, and requires that a physician assistant work under the specifically defined supervision of a physician. *See* TEX.OCC.CODE ANN. §§ 204.051-204.207.

The Act also includes a section imposing a duty on physician assistants and physicians, to report to the physician assistant board any information which, in that person's opinion, indicates a physician assistant "poses a continuing threat to the public welfare through practice as a physician assistant." TEX.OCC.CODE ANN. § 204.208(a)(Vernon 2004). Section 204.208(b) specifically incorporates several provisions of Chapter 160 of the Medical Practice Act. *See* TEX.OCC.CODE ANN. § 204.208(b); *see also* TEX.OCC.CODE ANN. § 151.001 (Vernon 2004)(providing that Texas Occupations Code Title 3, Subtitle B, may be cited as "the Medical Practice Act"). Subparagraph (b) provides "[s]ections 160.002, 160.003, 160.006, 160.007(d), 160.009, 160.013, 160.014, and 160.015 apply to medical peer review relating to the practice of a physician assistant." TEX.OCC.CODE ANN. § 204.208(b). Furthermore, subparagraph (c) provides immunity from civil liability for any person, health care entity or a medical peer review committee, who furnishes records, information, or assistance to the physician assistant board without malice. TEX.OCC.CODE ANN. § 204.208(c).

Based on the Legislature's decision not to incorporate Section 160.010 into Section 204.208(b), in addition to the limitation of the section's immunity provision's limitation to liability related to the "act" of reporting a physician assistant to the board, there is no indication from the statutory language that the Legislature intended Section 160.010 to apply to credentialing decisions regarding a physician assistant. Furthermore, the placement of Section 160.010 in the subtitle dedicated solely to licensing and governing of physicians, also indicates a Legislative intent for the provision to apply only to credentialing decisions involving physicians. Accordingly, we conclude Del Sol was not entitled to immunity for its credentialing activities related to Physician Assistant Malphurs, and the Morenos were not required to allege and produce evidence that Mr. Malphurs was credentialed with malicious intent to avoid summary judgment on their negligent credentialing allegations. Summary judgment was not properly granted on Del Sol's second "traditional" ground.

Finally, we must address Del Sol's no-evidence grounds.[4] The hospital raised two basis for summary judgment under the no-evidence standard. It alleged there was no evidence of malice in its credentialing of Mr. Malphurs, and it argued that Dr. Ostrander's opinion conclusively established the hospital was not a proximate cause of Ms. Moreno's death.[5] As we have concluded, Section 160.010 does not apply in the case of a hospital's activities in credentialing a physician assistant, malice was not an essential element of the Morenos' cause of

_____

[4] As the no-evidence summary judgment standard and its accompanying standard of review were discussed at length in our analysis of Dr. Quintana's no-evidence motion, we see no need to repeat those well-known standards here. To the extent necessary, our analysis of Dr. Quintana's no-evidence motion is incorporated by reference in the discussion of Issue Four.

[5] Del Sol's summary judgment argument on this point was identical to the argument presented by Dr. Quintana.

-20-

action against the hospital. Therefore, the family's failure to produce such evidence in response to Del Sol's motion did not provide a basis for summary judgment. Regarding the proximate cause element, Del Sol's argument is identical to that made by Dr. Quintana and discussed at length above. Dr. Ostrander's singular statement that the failed intubation was the ultimate cause of Ms. Moreno's death does not prevent the remainder of the summary judgment evidence produced by the Morenos from raising genuine issues of material fact regarding other causes, including their allegations of negligence against the hospital. *See Gray*, 225 S.W.3d at 616-17. Again, the proximate cause element was not a proper basis for the trial court's judgment. *See Borrego*, 964 S.W.2d at 959. Having determined that none of the grounds presented in Del Sol's motion for summary judgment provide a proper basis for the trial court's judgment, we sustain Issue Four.

Having sustained Issues One, Three, and Four, we reverse the trial court's summary judgment and remand the case for proceedings consistent with this opinion.

March 10, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J. (Not Participating)

-21-