

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00209-CV

KARL WALLACE,

                                                    Appellant

 v.

AMTRUST INSURANCE COMPANY OF KANSAS, INC.,
JOHN COLE INSURANCE AGENCY, INC.
AND JOHN COLE, INDIVIDUALLY,

                                                    Appellee


From the 278th District Court
Walker County, Texas
Trial Court No. 1125693


## MEMORANDUM  OPINION ON REHEARING


In several issues, appellant, Karl Wallace, challenges summary judgments entered

in favor of appellees, AmTrust Insurance Company of Kansas, Inc., John Cole Insurance

Agency, Inc., and John Cole, individually.  In our original opinion, we reversed the trial

court's judgment as to AmTrust and affirmed the judgment entered in favor of the Cole

defendants.  In response to our opinion, Wallace filed a motion for rehearing challenging

our conclusion with respect to the Cole defendants. After reviewing the record, we grant Wallace's motion for rehearing, withdraw our memorandum opinion and judgment issued January 14, 2016, and substitute the following in its place. We reverse and remand.

## I. BACKGROUND

Until the time of his death in 2007, Wallace's father lived on property located at 1100 Lone Oak Drive in Oakhurst, Texas—a few hundred miles from Fort Worth, Texas. This property included both a mobile home and 130 acres of land. Because he had been granted a life estate in the property, Robert Guenther began living in the mobile home until he died in 2009. Wallace, a resident of Fort Worth, subsequently took sole ownership of the property in late 2009.

Realizing that the property was left vacant and that the mobile home was deteriorating, Wallace decided to sell the property. However, to protect his interest in the interim, Wallace contacted John Cole of the John Cole Insurance Agency, Inc. to procure insurance. Wallace transacted with Cole because Cole's company had insured the property for Wallace's father.

Because he did not have authority to sell or bind coverage on behalf of AmTrust, Cole had to submit an application for insurance to Stroud Insurance Agency, Inc.—a managing general agency that had a duty to follow the underwriting guidelines of AmTrust. Cole asserts that Stroud and AmTrust do not issue Farm and Ranch insurance policies on properties that are vacant or unoccupied at the time the insurance application

is submitted. Wallace claims that he told Cole that the property was vacant and unoccupied. Nevertheless, an insurance application was submitted to Stroud and AmTrust for approval.

Wallace admitted that, on January 12, 2010, he signed the commercial application of insurance that was submitted to Stroud and AmTrust for approval. Wallace further testified that he believed that he answered all of the application questions truthfully. In any event, Cole, on behalf of Wallace, indicated that the property was 100% occupied, among other things. Furthermore, in the Farm and Ranch Supplemental, which was made a part of the application, Cole indicated that none of the dwellings on the property were vacant or unoccupied. Once the application was completed, Cole faxed the document to Wallace for review. Cole instructed Wallace to verify the accuracy of the statements and to correct any mistakes. Without making any corrections, Wallace signed the application, including the Farm and Ranch Supplemental, and returned it to Cole, who, in turn, submitted the application to Stroud for approval. Stroud and AmTrust ultimately approved Wallace's application and issued a policy, with a renewal effective on January 18, 2011. The policy was subsequently renewed.

No problems arose until January 29, 2011, when a grass fire destroyed the mobile home on the property. In an affidavit that was executed on May 17, 2012, and later struck by the trial court as to the Cole defendants, Wallace noted the following:

> I turned in the claim for the loss to the house the day after the loss. Within a week or two at most, I gave statements and answered questions posed to

me by the adjuster. At that time, the adjuster was informed that the house was vacant and unoccupied at the time of the loss and had been vacant and unoccupied since I had taken possession of it. The adjuster was also informed that all utilities were off at the house and had been since I had taken possession of the house. I told them this in response to their repeated requests to provide them with utility bills.

AmTrust began investigating Wallace's claim.

In the meantime, Wallace filed suit against AmTrust and the John Cole Insurance Agency, asserting numerous claims against: (1) the John Cole Insurance Agency for violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act; and (2) AmTrust for breach of contract and violations of the Texas Insurance Code. Nevertheless, as part of AmTrust's investigation, Wallace submitted to an examination under oath on July 26, 2011. Thereafter, on August 18, 2011, AmTrust sent a letter to Wallace's attorney, stating:

> This is to follow up on our conversation after the recent examination under oath of Karl Wallace. More particularly, AmTrust Insurance Company of Kansas, Inc. ("AmTrust") discovered several things during the examination. First, it determined that the house was both vacant and unoccupied not only at the time of loss, but also, prior to the time that the application for insurance was filled out and sent to AmTrust for review. Mr. Wallace testified that both he and Mr. John Cole knew that the property was vacant and unoccupied. Mr. Wallace confirmed that it was his signature on the application. He was not under duress or any other condition that would have forced him to sign the application. Mr. Wallace knew that the executed application would be analyzed by AmTrust for the purposes of determining whether to issue the policy or not.

> As we discussed, AmTrust does not issue or underwrite residential properties that are vacant or unoccupied. The risk of loss is simply too high. Accordingly, AmTrust is under no obligation to pay your client any benefits that he contends are due and owing under the policy.

AmTrust hereby offers to settle the case on the following terms and conditions. If Mr. Wallace will agree to dismiss AmTrust from the lawsuit with prejudice, AmTrust will immediately refund all premiums going back to the original policy it issued to Mr. Wallace. The first policy became effective on or about January 11, 2010.

Wallace declined AmTrust's settlement offer and proceeded with his lawsuit. Wallace later amended his petition to include John Cole as an individual defendant. In his live petition, Wallace made agency claims, including liability for acts and omissions occurring within the scope of actual or apparent authority, and vicarious-liability and negligence claims against all the defendants. As to AmTrust, Wallace alleged: (1) statutory vicarious liability under section 4001.051 of the Texas Insurance Code; (2) that AmTrust violated numerous other provisions of the Insurance Code; and (3) breach-of-contract and breach-of-the-duty-of-good-faith-and-fair-dealing claims. With respect to the Cole defendants, Wallace asserted claims for DTPA and Texas Insurance Code violations.

In response to Wallace's petitions, the Cole defendants filed traditional and no-evidence motions for summary judgment, arguing that, among other things, Wallace admitted that Cole did not make a misrepresentation regarding the insurance policy; the Cole defendants owed no duty to Wallace to procure coverage not specifically requested by Wallace; and the Cole defendants had no duty to extend Wallace's insurance

protection.[1]  More specifically, the summary-judgment motions of the Cole defendants addressed Wallace's Insurance Code and DTPA claims, but did not explicitly address his negligence or vicarious-liability claims.

In any event, Wallace responded to the Cole defendants' summary-judgment motions and attached as exhibits Wallace's examination under oath, deposition testimony from both Cole and Wallace, and Wallace's May 17, 2012 affidavit.  Later, the Cole defendants moved to strike Wallace's May 17, 2012 affidavit as a sham.  On September 25, 2012, the trial court granted the Cole defendants' motion to strike and granted their traditional and no-evidence motions for summary judgment. Subsequently, Wallace filed a motion to reconsider the rulings on the Cole defendants' motions; the trial court denied Wallace's motion for reconsideration.

Additionally, AmTrust filed a traditional motion for summary judgment, which was supplemented several times to include collateral estoppel assertions and a motion for rescission.[2]  Wallace responded to AmTrust's summary-judgment motion and attached as exhibits:  (1) Wallace's examination under oath; (2) deposition testimony from

---

[1] In support of their no-evidence motion for summary judgment, the Cole defendants contended that there was no evidence that they "committed false, misleading or deceptive acts that were a producing cause of actual damages to the Plaintiffs.  Accordingly, Plaintiff has failed to provide any evidence supporting one or more elements of its DTPA claim and summary judgment is proper as a matter of law." Additionally, the Cole defendants argued that there was no evidence that they violated Chapter 541 of the Insurance Code or that their actions or practices were a producing cause of Wallace's actual damages.

[2] Although not relevant to this appeal, AmTrust filed cross-claims for contribution and/or indemnity against the Cole defendants, and the Cole defendants moved for summary judgment on the cross-claims.  AmTrust eventually non-suited its cross-claims against the Cole defendants.

both Cole and Wallace; and (3) affidavits executed by Wallace on April 10, 2012 and May 17, 2012. Thereafter, AmTrust objected to Wallace's May 17, 2012 affidavit, arguing that "[a] party cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment." However, AmTrust did not obtain a ruling on its objection to Wallace's affidavit.

On June 10, 2014, the trial court entered its final judgment, wherein the trial court: (1) once again denied Wallace's motion for reconsideration and granted the Cole defendants' motions for summary judgment; (2) granted AmTrust's motion for summary judgment and its supplemental materials; (3) granted AmTrust's summary judgment based on collateral estoppel; (4) granted AmTrust's motion to rescind the insurance policies; and (5) ordered AmTrust to refund the premiums paid by Wallace for the insurance policies. The trial court also dismissed all of Wallace's claims against AmTrust and the Cole defendants with prejudice and ordered that Wallace take nothing by his lawsuit. This appeal followed.

## II.    STANDARD OF REVIEW

Different standards of review apply to summary judgments granted on no-evidence and traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). A no-evidence summary judgment is equivalent to a pre-trial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.

2006).  Once an appropriate no-evidence motion for summary judgment is filed, the non-movant, here Wallace, must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment.  *See* TEX. R. CIV. P. 166a(i).  "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced."  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).  We do not consider any evidence presented by the movant unless it creates a fact question.  *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004).

"Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion of fact.'"  *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 772 (Tex. App.—Corpus Christi 2003, no pet.) (op. on reh'g) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).  Conversely, more than a scintilla exists when the evidence "raises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *Id.* (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)).  In determining whether the non-movant has met his burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not.  *Tamez*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

In contrast, we review the trial court's grant of a traditional motion for summary judgment de novo.  *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.

2003).  When reviewing a traditional motion for summary judgment, we must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).  The movant bears the burden of proof in a traditional motion for summary judgment, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  *See Grant*, 73 S.W.3d at 215.  We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).  We will affirm a traditional summary judgment only if the record establishes that the movant has conclusively proved its defense as a matter of law or if the movant has negated at least one essential element of the plaintiff's cause of action.  *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

When the trial court's judgment does not specify which of several grounds proposed was dispositive, we affirm on any ground offered that has merit and was preserved for review.  *See Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 157 (Tex. 2004). Moreover, when a party moves for summary judgment under both rules 166a(c) and 166a(i), "[we] first review the trial court's summary judgment under the standards of rule 166a(i)." *Ridgway*, 135 S.W.3d at 600.

### III.  AMTRUST AND THE NOTICE PROVISION OF SECTION 705.005 OF THE INSURANCE CODE

Among the many arguments advanced by Wallace on appeal is that AmTrust failed to meet its burden regarding a required statutory notice provision—namely, section 705.005 of the Insurance Code.  *See* TEX. INS. CODE ANN. § 705.005 (West 2009). Section 705.005 provides the following:

(a) This section applies to any suit brought on an insurance policy issued or contracted for after June 29, 1903.

(b) A defendant may use as a defense a misrepresentation made in the application for or in obtaining an insurance policy only if the defendant shows at trial that before the 91st day after the date the defendant discovered the falsity of the representation, the defendant gave notice that the defendant refused to be bound by the policy:

   (1) to the insured, if living; or

   (2) to the owners or beneficiaries of the insurance policy, if the insured was deceased.

(c) This section does not:

   (1) make available as a defense an immaterial misrepresentation; or

   (2) affect the provisions of Section 705.004[3].

---

[3] Section 705.004 of the Insurance Code states:

(a) An insurance policy provision that states that false statements made in the application for the policy or in the policy make the policy void or voidable:

   (1)  has no effect; and

   (2)  is not a defense in a suit brought on the policy.

(b) Subsection (a) does not apply if it is shown at trial that the matter misrepresented:

*Id.* On appeal, Wallace contends that "AmTrust did not conclusively prove that it provided the required notice because a fact issue remains regarding when it discovered the misrepresentations."[4] In making this argument, Wallace relies heavily on his May 17, 2012 affidavit, which was struck as to the Cole defendants but not as to AmTrust.

As summary-judgment evidence, AmTrust submitted the August 18, 2011 letter it sent to Wallace, wherein AmTrust noted that it discovered misrepresentations during Wallace's July 26, 2011 examination under oath and that AmTrust had no obligation to pay Wallace under the policy. However, in his May 17, 2012 affidavit, which was included in the summary-judgment evidence as to AmTrust, Wallace indicated that, among other things, he notified the AmTrust adjuster that the house was vacant and unoccupied at the time of the loss and had been vacant and unoccupied since he had taken possession of the property. *See Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) ("[A] deposition does not have controlling effect over an affidavit in

---

    (1) Was material to the risk; or

    (2) Contributed to the contingency or event on which the policy became due and payable.

(c) It is a question of fact whether a misrepresentation made in the application for the policy or in the policy itself was material to the risk or contributed to the contingency or event on which the policy became due and payable.

TEX. INS. CODE ANN. § 705.004 (West 2009).

[4] The record reflects that Wallace raised this contention in his response to AmTrust's traditional motion for summary judgment.

determining whether a motion for summary judgment should be granted." (citing *Gaines v. Hamman*, 163 Tex. 61, 358 S.W.2d 557, 562 (1962))); *Cantu v. Peacher*, 53 S.W.3d 5, 10-11 (Tex. App.—San Antonio 2001, pet. denied) ("Most differences between a witness's affidavit and deposition are more a matter of degree and details than direct contradiction. This reflects human inaccuracy more than fraud."); *see also* TEX. R. CIV. P. 166a(f) (authorizing the use of affidavits as summary-judgment evidence so long as certain criteria are met).[5] According to Wallace, this conversation occurred within a week or two of the grass fire, which would have been in mid-February 2011.

Given that we take as true all evidence favorable to Wallace, and we indulge every reasonable inference and resolve any doubts in Wallace's favor, *see Valence Operating Co.*, 164 S.W.3d at 661, we believe that the statements Wallace made in his May 17, 2012 affidavit raise a material fact issue as to whether AmTrust complied with the notice provision of section 705.005(b) of the Insurance Code. *See* TEX. INS. CODE ANN. § 705.005(b). In other words, the record contains competent summary-judgment evidence that AmTrust may have discovered Wallace's false statements in mid-February 2011, but

---

[5] Texas Rule of Civil Procedure 166a(f) states the following, in relevant part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits.

TEX. R. CIV. P. 166a(f).

did not deny coverage under the policy until August 18, 2011, which was more than ninety days after mid-February 2011. We therefore conclude that the trial court erred in granting summary judgment in favor of AmTrust. *See* TEX. R. CIV. P. 166a(c); *Knott*, 128 S.W.3d at 215; *Grant*, 73 S.W.3d at 215. And because AmTrust was not entitled to summary judgment on their misrepresentation defenses, we cannot say that it was entitled to rescission of the insurance policies at this time. *See, e.g., Hannon, Inc. v. Scott*, No. 02-10-00012-CV, 2011 Tex. App. LEXIS 3624, at \*\*27-27 (Tex. App.—Fort Worth May 12, 2011, pet. denied) (mem. op.) ("Rescission is an equitable remedy that extinguishes legally valid contracts that must be set aside because of, among other things, fraud. Upon rescission, the rights and liabilities of the parties are extinguished; any consideration paid is returned, together with such further special damage or expense as may have been incurred by the party wronged; and the parties are restored to their respective positions as if no contract had ever existed."). Furthermore, we need not address Wallace's other complaints regarding AmTrust because section 705.005 of the Insurance Code "applies to any suit brought on an insurance policy issued or contracted for after June 29, 1903," because Wallace's claims in the trial court were derived from AmTrust's refusal to provide coverage under the insurance policies, and because the crux of AmTrust's defense was that Wallace made misrepresentations in the insurance application—a scenario that is covered by Chapter 705 of the Insurance Code. *See* TEX. INS. CODE ANN. § 705.005; *see also* TEX. R. APP. P. 47.1, 47.4. We sustain Wallace's first issue.

## IV. THE COLE DEFENDANTS

In his second and third issues, Wallace contends that the trial court abused its discretion in granting the Cole defendants' motion to strike his May 17, 2012 affidavit and that the trial court erred in granting summary judgment in favor of the Cole defendants.

### A. Applicable Law

"Rulings on the admission or exclusion of summary judgment evidence are reviewed under an abuse of discretion standard." *Moreno v. Quintana*, 324 S.W.3d 124, 127 (Tex. App.—El Paso 2010, pet. denied) (citing *Barraza v. Eureka Co., A Div. of White Consol. Indus., Inc.*, 25 S.W.3d 225, 228 (Tex. App.—El Paso 2000, pet. denied)). "A trial court abuses its discretion when the trial court fails to act in accordance to guiding rules or principles." *Id.* (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)).

### B. Discussion

#### 1. The Sham-Affidavit Doctrine

Here, the Cole defendants filed a motion to strike Wallace's affidavit as a sham. Specifically, the Cole defendants alleged that the affidavit contradicted Wallace's earlier deposition testimony and was only filed to create a fact issue to avoid summary judgment. The trial court ultimately granted the motion to strike Wallace's affidavit.

In *Thompson v. City of Corsicana Housing Authority*, this Court declined to recognize the sham-affidavit doctrine and noted the following:

In one of the earliest reported cases disclosed by our research, the San Antonio Court of Civil Appeals had the following to say about the rule on affidavits made in bad faith:

> While this section provides penalties for the making of affidavits in bad faith, the striking of the offending affidavit or pleading is not made one of them. We think it rather apparent that the trial judge was of the opinion that appellants were evasive and equivocal of statement and were trifling with the court by raising frivolous and groundless defenses. But such conclusions necessarily involve fact questions relating to the credibility of witnesses, which under our system of jurisprudence must be determined by a jury [when demanded] in actions to determine civil liability. A case may be determined by summary judgment only when no material fact issues are involved and questions of law alone are presented.

*Toliver v. Bergmann*, 297 S.W.2d 208, 210 (Tex. Civ. App.—San Antonio 1956, no writ) (citations omitted).

. . . .

We believe *Toliver* states the correct rule. It is certainly arguable that Nance made her affidavit in bad faith to avoid what appeared a certain summary judgment on her premise defect claim. However, that goes directly to her credibility, which is not an issue on which a court can grant a summary judgment. As we have said on another occasion, conflicts or inconsistencies in the summary judgment evidence of a single witness create a fact issue to be resolved by a jury.

. . . .

For these reasons, we adhere to our statement in *Sosebee*. If a party provides inconsistent or conflicting summary judgment proof, that party has created a fact issue for the trier of fact to resolve. As the Supreme Court has stated, [i]f the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted.

It can be argued that this approach allows an unscrupulous party to file summary judgment affidavits solely for the purpose of creating "sham"

fact issues. However, we must rely on attorneys as officers of the court to honor their duty of candor toward the court. An attorney's failure to observe this duty constitutes professional misconduct for which sanctions may be imposed.

57 S.W.3d 547, 556-58 (Tex. App.—Waco 2001, no pet.) (internal citations & quotations omitted); *see Baker v. City of Robinson*, 305 S.W.3d 783, 794 (Tex. App.—Waco 2009, pet. denied).

Therefore, because this Court does not recognize the sham-affidavit doctrine, we conclude that the trial court abused its discretion in striking Wallace's affidavit from the summary-judgment record. *See Baker*, 305 S.W.3d at 794; *Thompson*, 57 S.W.3d at 556-58; *see also Moreno*, 324 S.W.3d at 127. Accordingly, in analyzing Wallace's complaints about the summary judgment entered in favor of the Cole defendants, we will consider Wallace's affidavit as part of the summary-judgment record.

## 2. The Summary Judgment in Favor of the Cole Defendants

As noted earlier, Wallace made agency claims, including liability for acts and omissions occurring within the scope of actual or apparent authority, and vicarious-liability and negligence claims against the Cole defendants. Additionally, Wallace asserted DTPA and Insurance-Code violations against the Cole defendants. In response to Wallace's claims, the Cole defendants filed no-evidence and traditional motions for

summary judgment as to Wallace's DTPA and Insurance-Code violations.[6] However, the Cole defendants' summary-judgment motions did not address all of Wallace's claims.

The Texas Supreme Court has stated that: "Summary judgments, however, may only be granted upon grounds expressly asserted in the summary judgment motion." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (citing TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)). "Granting summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error." *Id.* (citing *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam)).

In its final judgment, the trial court granted the Cole defendants' summary-judgment motions and dismissed all of Wallace's claims against the Cole defendants with prejudice. As such, the trial court ordered that Wallace "take nothing by his suit" against the Cole defendants. This is not authorized under the law governing summary judgments. *See Magee*, 347 S.W.3d at 297; *McConnell*, 858 S.W.2d at 341; *Chessher*, 658 S.W.2d at 564. The Cole defendants did not move for summary judgment as to all of

---

[6] The Cole defendants do assert in their summary-judgment motions that they did not "owe a legal duty to extend the insurance protection of Plaintiff." However, in his live pleading, Wallace alleged that the Cole defendants owed him "a duty to assure that Plaintiff received the services he requested and paid for" and that the failure to exercise ordinary care in performing that duty proximately caused him damage. A review of the record demonstrates that the duty alleged by Wallace differs from the duty described by the Cole defendants in their summary-judgment motions. As such, it appears as if the trial court not only improperly granted summary judgment as to Wallace's agency and vicarious-liability claims, but also his negligence claims. And even if one were to construe the Cole defendants' summary-judgment motions as properly addressing Wallace's negligence claims, after taking as true all evidence favorable to Wallace, the non-movant, we conclude that the record evidence raises a fact issue as to the breach element of Wallace's negligence cause of action against the Cole defendants.

Wallace's claims. Accordingly, the trial court could not grant summary judgment on Wallace's negligence, agency, and vicarious-liability claims and ultimately enter a take-nothing judgment in the Cole defendants' favor. *See Magee*, 347 S.W.3d at 297; *McConnell*, 858 S.W.2d at 341; *Chessher*, 658 S.W.2d at 564; *see also LaGoye v. Victoria Wood Condo. Ass'n*, 112 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Because a trial court cannot grant more relief than was requested by a motion for summary judgment, the trial court erred in granting summary judgment on these unchallenged claims. . . . . Therefore, we reverse summary judgment as to the claims that are based on alleged violations of the Real Estate Licensing Act, breach of a duty of good faith and fair dealing, breach of a duty to fairly settle claims, and unfair claims settlement practices, and remand those claims to the trial court." (internal citations omitted)). We therefore sustain Wallace's second and third issues.

## V.     CONCLUSION

Having sustained all of Wallace's issues on appeal, we reverse the trial court's final judgment as to AmTrust and the Cole defendants and remand for proceedings consistent with this opinion.



AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Reversed and remanded
Opinion delivered and filed June 2, 2016
[CV06]

